**Walter DASH, and wife Rosa Dash, Plaintiffs,**

v.

**FIRSTPLUS HOME LOAN TRUST 1996–2, Firstplus Home Loan Owner Trust 1996–3, Firstplus Home Loan Owner Trust 1996–4, Firstplus Home Loan Owner Trust 1997–1, Firstplus Home Loan Owner Trust 1997–2, Firstplus Home Loan Owner Trust 1997–3, Firstplus Home Loan Owner Trust 1997–4, Firstplus Home Loan Owner Trust 1998–1, Firstplus Home Loan Owner Trust 1998–2, Firstplus Home Loan Owner Trust 1998–3, Firstplus Home Loan Owner Trust 1998–4, Firstplus Home Loan Owner Trust 1998–5, German American Capital Corporation, UBS Warburg Real Estate Securities Inc., f/k/a Paine Webber Real Estate Securities, Inc., Ace Securities Corporate Home Loan Trust 1999 A, Sovereign Bank, Real Time Resolutions, Inc., U.S. Bank National Association, and U.S. Bank National Association, N.D., Defendants.**

No. 1:01CV00923.

United States District Court, M.D. North Carolina.

March 6, 2003.

A. Hoyt Rowell, III, Daniel Myers, Kevin Oufnac, Fred Thompson, Ness, Motley, Loadholt, Richardson & Poole, Mt. Pleasant, SC, Gary K. Shipman, Jennifer J. Slusser, William Grainger Wright, Sr., Shipman & Hodges, LLP, Wilmington, NC, Eric G. Calhoun, Lawson & Fields, PC, Dallas, TX, for Plaintiffs.

Hada V. Haulsee, Ronald R. Davis, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, Jason Everett Moss, Wyatt, Early, Harris & Wheeler, LLP, High Point, NC, for Defendants.

Todd L. McLawhorn, David Stagman, Sheldon T. Zenner, Katten, Muchin, Zavis, Chicago, IL, Robert R. Marcus, Smith Moore, LLP, Greensboro, NC, for UBS Warburg Real Estate Securities Inc.

Larry B. Sitton, Smith, Helms, Mullis & Moore, Greensboro, NC, Roy W. Arnold, Mary J. Hackett, Thomas L. Allen, Reed Smith, LLP, Pittsburgh, PA, for Sovereign Bank.

*MEMORANDUM OPINION*

BEATY, District Judge.

This matter is before the Court on a Motion to Remand by Plaintiffs Walter and Rosa Dash ("Dash") [Document # 8], and Motions to Dismiss by Defendant Sovereign Bank ("Sovereign") [Document # 17], Defendant UBS Warburg Real Estate Securities, Inc., ("UBS Warburg") [Document # 19], and Defendants First-Plus Home Loan Trust 1996–2, FirstPlus Home Loan Owner Trust 1996–3, First-Plus Home Loan Owner Trust 1996–4, FirstPlus Home Loan Owner Trust 1997–1, FirstPlus Home Loan Owner Trust 1997–2, FirstPlus Home Loan Owner Trust 1997–3, FirstPlus Home Loan Owner Trust 1997–4, FirstPlus Home Loan Owner Trust 1998–1, FirstPlus Home Loan Owner Trust 1998–2, FirstPlus Home Loan Owner Trust 1998–3, First-Plus Home Loan Owner Trust 1998–4, FirstPlus Home Loan Owner Trust 1998–5, German American Capital Corporation, Ace Securities Corporate Home Loan Trust 1999 A, Real Time Resolutions, Inc., U.S. Bank National Association, and U.S. Bank National Association, N.D. (collectively "Trust Defendants") [Document # 21], (Sovereign, UBS Warburg, and Trust Defendants are collectively "Defendants"), for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Trust Defendants also allege that this Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, Plaintiffs' Motion to Remand is DENIED, Sovereign's Motion to Dismiss is GRANTED, UBS Warburg's Motion to Dismiss is GRANTED, and Trust Defendants' Motion to Dismiss is GRANTED.

## I. BACKGROUND

On August 23, 1997, Plaintiffs Walter and Rosa Dash obtained a secondary mortgage loan from an originating lender [1] secured by a lien on their residence. (Compl.¶ 36.) The principal amount of the loan was $35,000, and pursuant to the terms of the agreement, the interest rate was 17.99% over a 180 month term. (Compl.¶ 36.) The originating lender also charged Plaintiffs fees and costs totaling $4659.50 at closing, which included a general fee of $3500, an underwriting fee of $300, an administration fee of $125, a document preparation and signing fee of $125, a valuation review fee of $75, a flood certificate fee of $24.50, an attorney fee of $300, a title administration fee of $100, a title insurance fee of $70, and a recording fee of $40. (Compl.¶¶ 37–39.)

■ Plaintiffs filed this putative class action in the General Court of Justice Superior Court Division of Durham County, North Carolina on September 12, 2001.[2]

---

**1.** Plaintiffs, in their Complaint and other submissions to the Court, do not identify which institution was their lender. Instead, they refer collectively to a group of lenders which made second mortgage loans as "FirstPlus Group," and assert that they received their loan from one of the lenders in the FirstPlus Group. Specifically, the lenders that Plaintiffs identify in their Complaint are "FirstPlus Direct, doing business as FirstPlus Financial, Inc., successor in interest to Capital Direct Funding Group, Inc.," and FirstPlus Bank. (Compl.¶ 1.) None of these parties is named as a defendant in this action.

**2.** Class certification has not yet been requested by Plaintiffs. However, in considering the propriety of a removal, the district court generally "must restrict itself to 'the plaintiff's pleading, which controls.'" *Griffin v. Ford Consumer Fin. Co.*, 812 F.Supp. 614, 616 (W.D.N.C.1993) (quoting *Am. Fire and Cas. Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951)). Therefore, because Plaintiffs characterize the case as a class action, the Court will regard it as such for purposes of deciding the threshold issue raised by Plaintiffs' Motion to Remand.

Plaintiffs assert "upon information and belief" that Defendants are the current holders or assignees of promissory notes related to second mortgage loans made to Plaintiffs and Plaintiffs' Class Members which violate North Carolina state laws. (Compl.¶¶ 6, 40.) Count One of Plaintiffs' Complaint asserts that Defendants violated North Carolina General Statutes Chapter 24, Sections 10 and 14, when Defendants purchased second mortgage loans with interest rates, charges and fees allegedly in excess of the statutorily permitted amounts pursuant to Chapter 24, Sections 1.1 and 12, from the loan originators. (Compl.¶ 58.) Count Two of Plaintiffs' Complaint alleges that Defendants engaged in unfair and deceptive trade practices when they "routinely charged borrowers, including Plaintiffs, inflated expenses or expenses which were not incurred in connection with the making, closing disbursing, extending, readjusting, or renewing of the second mortgage loan" in violation of Chapter 75 of the North Carolina General Statutes. (Compl.¶ 67.)

On October 4, 2001, all Defendants removed the action to this Court based solely on assertions of diversity jurisdiction under 28 U.S.C. § 1332.[3] Plaintiffs are North Carolina residents and Defendants are corporations and trusts whose places of incorporation and/or principal places of business are outside of North Carolina. (Notice of Removal ¶¶ 3–4.) Plaintiffs contend, however, that the amount in controversy does not exceed $75,000 as required by 28 U.S.C. § 1332, and consequently, filed a Motion to Remand on November 5, 2001. (Mot. to Remand ¶ 8.) On February 7, 2002, Defendant Sovereign, Defendant UBS Warburg, and all of the Trust Defendants, filed separate Motions to Dismiss alleging that Plaintiffs failed to state a

claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6), and Trust Defendants further assert that this Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The arguments raised in each of these motions are substantially similar and will be dealt with by the Court together.

## II. DISCUSSION

### A. Motion to Remand

As an initial matter, the Court must address Plaintiffs' argument, made in their Motion to Remand, that Defendants improperly removed this action. Defendants removed this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs are all North Carolina residents while Defendants are corporations whose principal places of incorporation and/or principal places of business are outside of North Carolina. Therefore, the question for purposes of diversity jurisdiction is whether the "matter in controversy exceeds $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Plaintiffs argue that Defendants have not carried their burden of establishing facts that demonstrate the Court has diversity jurisdiction, that is Plaintiffs contend that Defendants have not demonstrated that Plaintiffs' Complaint asserts claims for which the amount in controversy will exceed $75,000. For this reason, Plaintiffs request that the Court remand the matter to the appropriate North Carolina court.

The gravamen of Plaintiffs' argument is that their "Complaint alleges no specific facts from which the Defendants or the Court can conclude to a reasonable probability and legal certainty that any or all of the named Plaintiffs' claims will exceed the

---

**3.** The Complaint asserts no federal questions, and Defendants do not contend that the Com- plaint alleges any federal questions.

jurisdictional amount in controversy, and Plaintiffs have specifically asserted a claim in good faith that compensatory damages shall not exceed $75,000.00." (Mem. in Supp. of Pls.' Mot. to Remand at 8.) Specifically, in their Complaint, Plaintiffs assert that they "will not have compensatory damages of Seventy–Five Thousand Dollars ($75,000.00) or greater." (Compl. ¶ 54.) Defendants respond by arguing that "Plaintiffs cannot defeat jurisdiction by the use of allegations attempting to limit damages in the Complaint." (Resp. Br. in Opp'n to Pls.' Mot. to Remand at 11.) Defendants state that "[t]he unrebutted mathematical calculations based on the face of the Complaint establish that the amount in controversy is in excess of $75,000 ..." and, as support, they rely upon the affidavit of Vance Horner II, a Certified Public Accountant, which they submitted with the Notice of Removal. (Resp. Br. in Opp'n to Pls.' Mot. to Remand at 5; Horner Aff.)

■ All defendants have a statutory right to remove any civil action brought in state court over which "the district courts of the United States have original jurisdiction ...." 28 U.S.C. § 1441(a); *Davis v. North Carolina Dep't of Corr.,* 48 F.3d 134, 138 (4th Cir.1995). However, because of inherent federalism concerns, federal courts construe removal jurisdiction quite strictly. *Mulcahey v. Columbia Organic Chems. Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994). "Due regard for the rightful independence of state governments ... requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined." *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 109, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941) (citations omitted). If it appears that there is a defect in the removal of the action, a party can make a motion to remand the case to state court, provided that such a motion comes "within 30 days after the filing of the notice of removal ...." 28 U.S.C. § 1447(c). The party seeking to preserve the removal then bears the burden of establishing federal jurisdiction. *Mulcahey,* 29 F.3d at 151; *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Ultimately, if the propriety of federal jurisdiction is doubtful, a remand is necessary. *Mulcahey,* 29 F.3d at 151.

■ In a class action, if there are "separate and distinct claims by two or more plaintiffs, the determination of the amount in controversy is based upon each plaintiff's claims and not upon the aggregate." *Glover v. Johns–Manville Corp.,* 662 F.2d 225, 231 (4th Cir.1981) (citing *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 293–96, 94 S.Ct. 505, 507–09, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 335–42, 89 S.Ct. 1053, 1056–59, 22 L.Ed.2d 319 (1969)). However, in *Rosmer v. Pfizer,* 263 F.3d 110 (4th Cir.2001), the Fourth Circuit held that if a named representative plaintiff has a claim in excess of $75,000, then a federal court has jurisdiction over the entire class based on supplemental jurisdiction under 28 U.S.C. § 1367. 293 F.3d at 112. Therefore, under *Zahn,* as interpreted by *Rosmer,* this Court has subject matter jurisdiction over the entire class if at least one named plaintiff has a claim exceeding $75,000. *Rosmer,* 263 F.3d at 114.

■ In North Carolina, a plaintiff is forbidden in some cases from claiming a specific amount greater than $10,000 in damages. N.C.R. Civ. P. Rule 8(a)(2). Instead, plaintiffs must proceed as Plaintiffs have done in this case, that is by simply stating that the relief demanded is "in excess of ten thousand dollars ($10,000)." *Id.* Since "[t]he burden of establishing federal jurisdiction lies on the party seeking to litigate in federal court," Defendants are the parties who must show that the amount in dispute exceeds $75,000. *Gwyn*

*v. Wal–Mart Stores, Inc.*, 955 F.Supp. 44, 45 (M.D.N.C.1996) (citing *McNutt*, 298 U.S. at 189, 56 S.Ct. at 785). Although the Fourth Circuit has not yet addressed what standard of proof applies in meeting this burden as to the amount in controversy,[4] this Court has previously followed the approach taken by other courts in the Middle District of North Carolina on the issue, and will continue to apply the "preponderance of evidence" standard.[5] *See Michael v. Bayer Corp.*, No. 1:01CV1106, 2003 WL 151850, at *3 (M.D.N.C. Jan.8, 2003) (citing *Turner v. CTS Con–Way Transp. Servs.*, No. 1:98CV00624, 1999 WL 1939243, at *1 (M.D.N.C. Apr.28, 1999) (citing precedent in other circuits and then adopting a preponderance of the evidence standard)).

▇ In considering the propriety of a removal, the district court generally "must restrict itself to 'the plaintiff's pleading, which controls.' " *Griffin v. Ford Consumer Fin. Co.*, 812 F.Supp. 614, 616 (W.D.N.C.1993) (quoting *Am. Fire and Cas. Co. v. Finn*, 341 U.S. 6, 14, 71 S.Ct. 534, 540, 95 L.Ed. 702 (1951)). Commensurate with that notion, the sum claimed by a plaintiff in the complaint ordinarily determines the jurisdictional amount, and a plaintiff may plead less than the jurisdic-

tional amount to avoid federal jurisdiction. *See St. Paul Mercury Indem., Co. v. Red Cab Co.*, 303 U.S. 283, 294, 58 S.Ct. 586, 593, 82 L.Ed. 845 (1938) ("If [the plaintiff] does not desire to try his case in the Federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.").

Defendants argue that the principles of *St. Paul* should be read in light of cases such as the Fifth Circuit's decision in *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir.1995), in which the court held that pleading below the jurisdictional minimum may be ignored if a defendant can show by a preponderance of the evidence that the amount in controversy actually exceeds the jurisdictional amount. *See also McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481, 485 (S.D.W.Va.2001) (noting that a better rule is to require the plaintiffs and their counsel to sign a binding pre-removal stipulation explicitly limiting recovery). The *De Aguilar* and *McCoy* decisions reason that a plaintiff's claim for relief is not always determinative of the amount in controversy because state procedural rules often do not limit damage awards to the plaintiff's original prayer for relief,[6] thereby allowing

---

4. *See Gwyn*, 955 F.Supp. at 46 (stating that the Fourth Circuit has not adopted a specific rule for determining the amount in controversy for jurisdictional purposes); *Rota v. Consolidation Coal Co.*, 175 F.3d 1016, 1999 WL 183873, *1 n. 4 (4th Cir.1999) (Table) (noting that the proper standard for assessing the value of an unspecified damage claim is subject to debate and declining to adopt a position).

5. The Court notes, however, that when a case is originally filed by a plaintiff in federal court and the defendant challenges jurisdiction, it is well-settled that the more stringent "legal certainty" standard applies. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). The uncertainty over what standard of proof to

apply when determining whether the amount in controversy has been established only exists in cases having the same procedural posture as the present action, that is, where the defendant has removed the case from state court and the plaintiff challenges jurisdiction. *See, e.g., De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409–10 (5th Cir.1995); 14A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3702 (1985). It is in situations such as this where other circuits, as well as other courts within this District, have applied the less demanding "preponderance of the evidence" standard.

6. North Carolina has such a rule. North Carolina Rule of Civil Procedure 54(c) permits a

a plaintiff to avoid federal jurisdiction while knowing that a larger award is possible in state court. *De Aguilar,* 47 F.3d at 1410; *McCoy,* 147 F.Supp.2d at 484–85. As the *McCoy* court explained, this situation:

[P]ermits strategic use of the state civil rules as a device to prevent removal, effectively permitting a plaintiff to avoid federal court and either (1) amend his prayer for relief, or (2) simply ignore it and then request the jury to make a more substantial award once the statutory deadline for removal has passed.

*McCoy,* 147 F.Supp.2d at 485. Thus, considering this potential for abuse, the *McCoy* court felt it was not "bound ineluctably to grant remand simply because a plaintiff 'limits' himself to a demand for recovery below the jurisdictional minimum." *Id.*

The next determination the *De Aguilar* and *McCoy* courts faced was deciding on "the burden of proof to be placed upon [the defendant] as it attempts to establish the jurisdictional minimum." *Id.* at 486. Both courts ultimately chose the "preponderance of the evidence" standard which, as noted, is also used within this District. Such a standard gives deference to the principle that a plaintiff's pleading ordinarily controls and recognizes that a "[p]laintiff is, to some extent, still the master of his own claim ..." because, under this standard, a "plaintiff's claim remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount." *De Aguilar,* 47 F.3d at 1411–12. Once a defendant has met this burden, "removal is proper, provided plaintiff has not shown that it is legally certain that his recovery

will not exceed the amount stated in the state complaint." *Id.* at 1412.

■■■ This Court will follow the approach adopted in *De Aguilar* [7] and *McCoy* because, as stated in *White v. J.C. Penney Life Ins. Co.,* 861 F.Supp. 25, 27 (S.D.W.Va.1994), "[t]he court [in applying the principles expressed in *St. Paul* ] is not required to leave its common sense behind." Moreover, by applying a preponderance of the evidence standard, the *De Aguilar* approach strikes an appropriate balance between a defendant's right of removal and a plaintiff's right to be the master of her own claim. "The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled ... [t]he defendant must produce evidence that establishes that the actual amount in controversy exceeds $[75],000." *De Aguilar,* 47 F.3d at 1412. Here, Defendants have pointed both to North Carolina law which permits Plaintiffs to recover more than what they pled, and produced evidence establishing that the actual amount in controversy exceeds $75,000. Furthermore, "common sense applied to the allegations of the Complaint compels the court to conclude that the amount in controversy exceeds $[75],000." *White,* 861 F.Supp. at 27.

■■■ When the amount of damages a plaintiff seeks is unclear, "the court may look to the entire record before it and make an independent evaluation as to whether or not the jurisdictional amount is in issue." *Id.* (citing 14A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3725 at 423–24 (1985)); *see also Gwyn,* 955 F.Supp. at 46 ("[U]ntil jurisdiction be-

---

plaintiff to recover in excess of the amount pled in the complaint.

**7.** The Court notes that some district courts within this circuit have declined to adopt *De Aguilar. See Spann v. Style Crest Prods., Inc.,* 171 F.Supp.2d 605, 609 (D.S.C.2001).

comes determinate, the court may consider any evidence of the amount in controversy."). Thus, the Court may consider, "in addition to plaintiff's Complaint, the removal petition and an affidavit filed by the defendant, both of which assert that the $[75],000 threshold is present." *White*, 861 F.Supp. at 27.

In the instant case, Defendants have attached an affidavit of a Certified Public Accountant, which contends that Plaintiffs' claims are worth more than $75,000, to their Notice of Removal. (Horner Aff.) Defendants' damage calculations are based on the face of Plaintiffs' Complaint and cover the three areas of damages that Plaintiffs seek.[8] Defendants have identified these as: 1) "[t]wice the total of all interest[9] paid [which] amounts to $48,704.42;" 2) relief from "any further obligation to pay interest on the note," which amounts to $42,059.79; and 3) recovery of "all closing fees and costs," which amounts to $4,659.50. (Resp. Br. in Opp'n to Pls.' Mot. to Remand at 8.) These three figures total $95,423.71. Notwithstanding the fact that these basic damages requests alone satisfy the amount in controversy requirement, Plaintiffs have also requested that they recover treble damages pursuant to the provisions of North Carolina General Statute § 75-16. (Compl.¶ 75.) Additionally, Plaintiffs request recovery of costs including reasonable attorneys' fees.[10] (*Id.*)

Pursuant to North Carolina Rule of Civil Procedure 54(c), the damages requested on the face of Plaintiffs' Complaint, as opposed to Plaintiffs' non-binding stipulation, ultimately determine the value of the claim. Consequently, the Court concludes that Defendants have demonstrated, based upon a preponderance of the evidence, that the damages requested on the face of the Complaint ensure that the value of the case well exceeds the requisite amount in controversy, and Plaintiffs have failed to demonstrate otherwise.[11] Accordingly, the Court finds that it has subject matter jur-

8. Specifically, Plaintiffs contend that they are entitled to damages "including twice the total of all interest paid, fees and costs, and are entitled to the refund of all interest previously paid to [ ] Defendants and to be relieved from any obligation to make further payments on interest on the note, plus all permissible attorneys [sic] fees" and costs. (Compl.¶ 62.) Plaintiffs also contend that because of Defendants' unfair and deceptive trade practices, they are entitled to recover treble damages from Defendants and reasonable attorneys' fees. (Compl.¶ 75.)

9. Although 28 U.S.C. § 1332(a) requires that the $75,000 threshold amount be met "exclusive of interest and costs," interest is not excluded from the calculation if it is itself the basis of the suit. *Brown v. Webster*, 156 U.S. 328, 330, 15 S.Ct. 377, 377–78, 39 L.Ed. 440 (1895)

10. The Court is mindful of the fact that any estimated award of attorneys' fees must be "prorated among all members of the plaintiff class." *Ratliff v. Sears, Roebuck and Co.*, 911 F.Supp. 177, 179 (E.D.N.C.1995). Therefore, because Defendants have not provided information as to the possible amount of attorneys'

fees or the possible size of the class, the Court would be required to engage in speculation in order to consider these amounts. However, even without attaching specific amounts to these damage components, the Court finds that the mere fact that Plaintiffs have requested such damages adds to the action's potential value, and therefore, provides further evidence that Defendants have demonstrated, by a preponderance of the evidence, that the total potential value exceeds the requisite amount in controversy.

11. Although they provide no support, Plaintiffs attempt to counter Defendants' amount in controversy evidence by asserting that Defendants would have the Court "infer that [P]laintiffs do have damages in excess of $75,000.00 based on the [ ] allegations in the Complaint ..." and by contending that "Mr. Horner's calculation fails to determine precisely what damages the Plaintiffs are entitled to ... and assumes and speculates as to the amount of damages at issue." (Mem. in Supp. of Pls.' Mot. to Remand at 8–9.) In his affidavit, Horner first sets forth the terms of the loan as alleged in the Complaint, namely, a "loan [received] on August 23, 1997, for

isdiction over the instant matter on diversity grounds, and therefore, Plaintiffs' Motion to Remand is DENIED.

### B. Motions to Dismiss

 Because Plaintiffs' Complaint satisfies the requirements of diversity jurisdiction, the Court will now address Defendants' Motions to Dismiss, some of which were filed by groups of Defendants and others which were filed by individual

Defendants. As a threshold matter, however, all Defendants contend that Plaintiffs lack standing to maintain their claims against Defendants. Alternatively, Defendants contend that Plaintiffs cannot maintain their claims for failure to state a usurious interest and fees charged claim or an unfair and deceptive trade practices claim because they would be barred by the applicable statute of limitations [12] and that the statutes do not apply to the instant controversy [13]. However, because of the

$35,000 with a 17.99% interest rate and a term of 180 months ...," and then Horner plainly arrives at the dollar figures described above and states that they are "based on a loan with the terms alleged in the complaint ...." (Horner Aff. ¶¶ 3, 5.) These calculations do not require the Court to make inferences, rather they provide precise amounts and are derived not from speculation, but directly from the figures contained in Plaintiffs' Complaint. Thus, Plaintiffs' unsupported assertions fall far short of showing "that it is legally certain that [their] recovery will not exceed the amount stated in the state complaint." *De Aguilar*, 47 F.3d at 1412.

12. Because the Court does not have subject matter jurisdiction over the instant matter, it cannot address the merits of Plaintiffs' substantive claims, or examine Defendants' Motions to Dismiss pursuant to Rule 12(b)(6). Nevertheless, the Court notes that Plaintiffs' claims under both Chapter 24 of the North Carolina General Statutes for usurious fees and interest and Chapter 75 of the North Carolina General Statutes for unfair and deceptive trade practices would be barred by the applicable statutes of limitations. Specifically, Plaintiffs signed their loan on August 23, 1997, and filed this action on September 12, 2001. The statute of limitations for a claim for usurious fees and interest pursuant to Chapter 24 of the North Carolina General Statutes is two years. N.C. Gen.Stat. §§ 1–53(2), 1–53(3). In order to maintain such a claim, Plaintiffs would have had to file their suit by August 23, 1999, and therefore, Plaintiffs would be barred from bringing their claim for usurious fees and interest. Additionally, the statute of limitations for a claim of unfair and deceptive trade practices is four years. N.C. Gen.Stat. § 75–16.2. Plaintiffs

would have had to file their suit by August 23, 2001 in order to maintain such a claim, and consequently, they would be barred from bringing their unfair and deceptive trade practices claim. The Court rejects Plaintiffs' argument that the accrual date of Plaintiffs' claim would be extended by the continuous remittance of monthly mortgage payments. Plaintiffs' claim would have accrued on the date when they knew or should have known they were being charged what they argue are usurious fees and interest, conduct which Plaintiffs also contend constitute unfair trade practices. The accrual of both claims, to the extent that they exist, would have been the same date, that is the date when the loan was closed on August 23, 1997.

13. As noted, because the Court lacks subject matter jurisdiction over this matter, it cannot address the merits of Plaintiffs' substantive claims. Nevertheless, the Court notes that Plaintiffs' claims under Chapter 75 of the North Carolina General Statutes for unfair and deceptive trade practices and some of Plaintiffs' claims under Chapter 24 of the North Carolina General Statutes (the "Interest Statutes") for usurious fees and interest would fail because the statutes are inapplicable in this instance. Specifically, Plaintiffs cannot maintain their claim for unfair and deceptive trade practices under Chapter 75 of the North Carolina General Statutes because Plaintiffs cannot demonstrate that the named Defendants engaged in an unfair or deceptive act. Plaintiffs rely on the notion of assignee liability as established by HOEPA to assert that assignee Defendants are responsible for the acts of their loan's originator. However, Plaintiffs' characterization of the reach of HOEPA's assignee liability is flawed because HOEPA does not create a new right or claim

Court's finding that there is merit in Defendants' argument that Plaintiffs lack standing to sue Defendants, the Court will not address in any detail Defendants' remaining Motions to Dismiss.

### 1. Standard of Review

There are two ways in which to present a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). Defendants may contend either that the complaint fails to allege facts upon which subject-matter jurisdiction can be based, or that the jurisdictional facts alleged in the complaint are untrue. *Id.* If, as in the instant case, defendants raise the former argument, then the plaintiffs enjoy procedural safeguards similar to those they would enjoy when opposing a Rule 12(b)(6) motion. *Id.* In such situations, the court accepts the plaintiffs allegations as true, construing them most favorably to the plaintiffs, and relies solely on the pleadings, disregarding affidavits or other materials. *Id.; Higgins v. United States,* 894 F.Supp. 232, 234 (M.D.N.C.1995). The defendants should prevail only if entitled to do so as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991).

### 2. Standing Requirements

■■■■■ As stated, Defendants argue that Plaintiffs' Complaint on its face demonstrates that the Court lacks subject matter jurisdiction in this case. The specific basis for this argument is that Plaintiffs have no standing to sue Defendants. The question of standing ultimately asks whether litigants are "entitled to have the court decide the merits of the dispute." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Only if plaintiffs have standing to sue do they present a case or controversy between themselves and the defendants within the meaning of Article III of the Constitution. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102, 118 S.Ct. 1003, 1016, 140 L.Ed.2d 210 (1998). Standing, therefore, is a fundamental component of a court's subject-matter jurisdiction. *Id.; Pye v. United States,* 269 F.3d 459, 466 (4th Cir.2001). As such, defendants may aptly challenge its existence by a motion to dismiss for lack of subject matter jurisdiction over the subject matter, pursuant to Federal Rule of Civil Procedure 12(b)(1). *Marshall v. Meadows,* 105 F.3d 904, 905–05 (4th Cir.1997). Moreover, courts are free to raise the question of subject matter jurisdiction *sua sponte* at any time before final judgment. *United States v. White,* 139 F.3d 998, 999–1000 (4th Cir.1998); 28 U.S.C. § 1447(c). Resolution of the question of standing necessarily takes precedence over the question of whether plaintiffs have stated a claim upon which relief can be granted, that is, without jurisdiction, the court has no power to rule on the validity of a claim. *Steel Co.,* 523 U.S. at 94–95, 118 S.Ct. at 1012–13; *see also Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) ("For it is well

---

that would not otherwise be cognizable under the law. Specifically, under North Carolina law, only the perpetrator of a fraud, and not a subsequent assignee, can be held liable for an unfair or deceptive trade practice. *Investors Title Ins. Co. v. Herzig,* 330 N.C. 681, 688, 413 S.E.2d 268, 271 (1992). Consequently, Plaintiffs cannot maintain their unfair and deceptive trade practices claim against assignee Defendants. Likewise, Plaintiffs make claims under sections 24–1.1, 24–10, 24–12, and 24–14 of the Interest Statutes for usurious interest and fees charged on their loan, which has a principal of $35,000. However, because sections 24–1.1, 24–12, and 24–14 only apply to loans where the principal amount is less than $25,000, Plaintiffs cannot sustain their claims under such sections of Chapter 24 of the North Carolina General Statutes. *See* N.C. Gen.Stat. §§ 24–1.1, 24–12, 24–14.

settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction . . . ."); *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). In the instant matter, all Defendants, in their briefs in support of their Motions to Dismiss, maintain that Plaintiffs lack standing, and consequently, Defendants assert that the Court lacks subject matter jurisdiction.[14]

Plaintiffs, however, assert that they satisfy the requirements of standing on two grounds. First, Plaintiffs maintain that because there is a juridical link among Plaintiffs and Class Members, FirstPlus Group, and all of Defendants, they have satisfied the requirements of standing.[15] Second, Plaintiffs rely on the Home Ownership Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1641, Pub.L. No. 103–325 (codified as amended at 15 U.S.C. §§ 1602(aa), 1639, and 1641(d)), as a basis for standing. Specifically, as to the second argument, Plaintiffs contend that because Defendants are assignees of secondary mortgage loans, HOEPA permits Plaintiffs to bring suit against them as though Defendants are the loan originators. The Court will address each of these arguments in turn.

**3. Existence of a Juridical Link to Establish Standing**

 To satisfy the "irreducible constitutional minimum" of standing, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), plaintiffs must establish three elements: (1) injury-in-fact; (2) traceability; and (3) redressability. 504 U.S. at 560–61, 112 S.Ct. at 2136; *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 154 (4th Cir.2000). Plaintiffs satisfy the injury-in-fact requirement if they have suffered an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent. *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136; *Friends of the Earth, Inc.,* 204 F.3d at 154. Traceability refers to causation. Plaintiffs must demonstrate that the injury they have suffered was caused by the challenged conduct of the defendants, and not by the independent action of some third party. *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136; *Friends of the Earth, Inc.,* 204 F.3d at 154. Finally, redressability assures the effectiveness of judicial involvement. Plaintiffs must show that it is likely, and not merely speculative, that a favorable decision will remedy the injury. *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136; *Friends of the Earth, Inc.,* 204 F.3d at 154. Although each of the three elements should be examined distinctly, their proof often overlaps. *Friends of the Earth, Inc.,* 204 F.3d at 154. Moreover, all three share the common purpose of ensuring that the judiciary, and not another branch of the government, is the appropriate forum in which to

---

**14.** The Court notes that only the Trust Defendants have filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Nevertheless, all Defendants argue in their memoranda in support of their respective Motions to Dismiss that Plaintiffs lack standing to bring the instant lawsuit.

**15.** Plaintiffs have named as Defendants every assignee of FirstPlus Group-originated North Carolina loans that were known at the time the Complaint was filed. (Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 9.)

address the complaint. *Id.* (citing *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)).

Even if Plaintiffs could establish sufficient injury-in-fact, they fail to satisfy the latter two requirements, that is traceability and redressability. Fundamentally, Plaintiffs do not allege any contractual relationship whatsoever with Defendants. Indeed, they carefully *avoid* stating that any of Defendants holds their mortgage-secured notes or services their loans. Instead, in their allegations directed specifically at Defendants, Plaintiffs state that they named Defendants solely based "upon information and belief" that they are "the holders of promissory notes related to the mortgage loans made by FirstPlus Group to Plaintiffs and Class Members." (Compl.¶ 6.) Plaintiffs never identify them as assignees, past or present, or purchasers of *their* respective loans.[16] Absent a contractual relationship with any of Defendants, Plaintiffs cannot possibly show that their injuries, such as they have suffered, are traceable to the conduct of any of Defendants, nor can they possibly show that a judicial ruling in their favor would likely redress their injuries.

■■■ In support of Plaintiffs' argument that they have the requisite standing, Plaintiffs cite *Moore v. Comfed Savings Bank,* 908 F.2d 834 (11th Cir.1990), in which the Eleventh Circuit in a factual scenario similar to the instant matter held that the named plaintiffs had standing over the assignee defendants, who were properly named under the permissive joinder rules. *Id.* at 838–39. The assignee defendants in *Moore* never held the specific loans made to the named plaintiffs, but held other identical loans from the same originating lender. *Id.* at 837. The *Moore*

court never resolved the standing question, however, and instead focused on whether jurisdiction was proper under the Federal Rules of Civil Procedure addressing joinder of parties. *Id.* at 838. Nevertheless, Plaintiffs cannot use joinder rules to cure their lack of standing. The Court need not address whether joinder is necessary or even appropriate, because procedural rules, such as the joinder rules, do not expand the jurisdictional boundaries of federal courts beyond the Article III limitations. *See, e.g., Christiansen v. Beneficial Nat'l Bank,* 972 F.Supp. 681, 683 n. 2 (S.D.Ga.1997).

Indeed, Plaintiffs' characterization of their suit as a putative class action in no way cures this defect. *See Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 1925 n. 20, 48 L.Ed.2d 450 (1976) ("That a suit may be a class action ... adds nothing to the question of standing ...."). Otherwise, any plaintiff could sue a defendant against whom the plaintiff has no claim in a putative class action, on the theory that some member of the hypothetical class, if a class were certified, might have a claim. Plaintiffs "may not use the procedural device of a class action to bootstrap [themselves] into standing [they] lack[ ]." *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 694 (E.D.Pa.1973).

The Seventh Circuit, in *Jackson v. Resolution GGF Oy,* 136 F.3d 1130 (7th Cir. 1998), examined a case nearly identical to the instant matter, in which it rejected the Plaintiffs' arguments. In that case, Plaintiff borrowers brought a putative class action to recover statutory penalties against alleged assignees and purchasers of notes (secured by junior mortgages on their real property) which they had executed with

---

**16.** Of Defendant, only Sovereign asserts that it does not hold the notes signed by Plaintiffs. (Reply Br. in Further Supp. of Mot. of Def. Sovereign Bank to Dismiss Pls.' Compl. at 7.)

The remaining Defendants argue that Plaintiffs lack standing because Plaintiffs do not allege that they hold the loan note.

the lender. *Id.* at 1131. One of the defendants, however, though it had bought some of the lender's paper, held none of the notes signed by any of the plaintiffs. *Id.* at 1132. This defendant moved for dismissal on the ground that none of the plaintiffs had standing to pursue a claim against it. *Id.* The court opined: "[The defendant's] position is impeccable. Some other borrowers may have claims against it, but none of these plaintiffs does .... There is no case or controversy between [the defendant] and any of the named plaintiffs, so [the defendant] must be dismissed as a party." *Id.*

Indeed, "it is essential that named class representatives demonstrate standing through a 'requisite case or controversy between themselves personally and [defendants],' not merely allege that 'injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir.1993) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1001 n. 13, 102 S.Ct. 2777, 2784 n. 13, 73 L.Ed.2d 534 (1982) (citations omitted) (alteration in original)). In a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants. *See Herlihy v. Ply–Gem Indus., Inc.*, 752 F.Supp. 1282, 1291 (D.Md.1990) (dismissing class action lawsuit because "each plaintiff has not and cannot allege an injury arising from the conduct of each and every defendant"). In the instant matter, the allegations in the Complaint are insufficient to confer standing against Defendants because Plaintiffs do not allege that Defendants hold their loan. Moreover, naming each Defendant because it holds the notes of unnamed class members is, at this point, impractical and uncertain because those members could opt out of the class and because a denial of class certification would prevent the claims from ever being justiciable. *See generally Gibson v. Chrysler Corp.*, 261 F.3d 927, 941 (9th Cir.2001), *cert. denied,* 534 U.S. 1104, 122 S.Ct. 903, 151 L.Ed.2d 872 (2002) (discussing the practicality of considering claims of named class members only for purposes of amount in controversy).

In response, Plaintiffs argue that by relying on a "juridical link" theory the named Plaintiffs may pursue their claims against Defendants because Defendants hold the loans of putative class members. Plaintiffs contend that Defendants are "juridically linked" because "Plaintiffs/Class [M]embers all received illegal and unfair secondary mortgage loans from [FirstPlus Group], which then scattered these loans among the universe of named Assignee Defendants." (Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 9.) In other words, Plaintiffs contend that they have standing to assert their claims against all Defendants because all of the holder Defendants are linked to Plaintiffs through a common juridical lynchpin, that is through FirstPlus Group.[17] By applying the juridical link theory to the instant matter, Plaintiffs argue that it is appropriate to join as Defendants parties with whom the named class representatives do not have a direct relationship.

A juridical relationship among defendants is most often found "[w]here all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accor-

---

**17.** The Court notes that the juridical link doctrine has recently come under close scrutiny due to its conflict with Article III standing issues. *See, e.g.,* William D. Henderson, *Reconciling the Juridical Links Doctrine with the Federal Rules of Civil Procedure and Article III,* 67 U.Chi.L.Rev. 1347 (2000). However, the Fourth Circuit has not yet examined the juridical link doctrine.

dance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional." *Thompson v. Bd. of Educ. of Romeo Cmty. Schs.*, 709 F.2d 1200, 1205 (6th Cir.1983) (quoting *Mudd v. Busse*, 68 F.R.D. 522, 527–28 (N.D.Ind.1975)). A juridical relationship can also be found in situations where there is a contractual obligation among all defendants. *See, e.g., United States v. Trucking Employers, Inc.*, 75 F.R.D. 682 (D.D.C. 1977). The types of cases that fall within this exception are those that have either a contractual obligation among all defendants, or a state or local statute which requires common action by defendants. *See Payton v. County of Kane*, 308 F.3d 673, 679 (7th Cir.2002) (finding a juridical link between Defendants because of an Illinois statute which permit Defendants to assess a bond fee in addition to a bail amount). Neither situation exists in the present action because Defendants do not have contractual relationships with each other and Plaintiffs do not challenge any state or local statute. Plaintiffs, therefore, do not fall within the "juridical link" exception. Accordingly, the Court rejects Plaintiffs' argument that the juridical link doctrine confers standing upon Plaintiffs.

### 4. Use of the Home Ownership Equity Protection Act as a Basis for Standing

■ Plaintiffs alternatively contend that because HOEPA provides a basis of assignee liability against secondary mortgage holders, and Defendants are secondary mortgage holders, that Plaintiffs satisfy the requirements of standing with respect to Defendants. Conversely, Defendants assert that standing does not exist here because HOEPA only provides Plaintiffs with a basis of assignee liability against the actual holder of their loan, and even then, only in certain circumstances.

In 1968, Congress enacted the Truth in Lending Act ("TILA"), a federal statute that governs the terms and conditions of consumer credit by, *inter alia*, requiring lenders to disclose certain details about the loans and loan fees and costs. 15 U.S.C. § 1601 *et seq.* Congress intended TILA to assure a meaningful disclosure of credit terms so that consumers would not be mislead as to the costs of financing. *Id.* Faced with increasing reports of abusive practices in home mortgage lending, Congress enacted HOEPA in 1994 as an amendment to TILA. HOEPA requires lenders to provide borrowers with additional disclosures with respect to certain home mortgages. 15 U.S.C. § 1639(a)(1). Congress intended HOEPA to result in greater disclosure to borrowers involved in high cost loans and to stop certain loan terms and practices. 15 U.S.C § 1639. The legislative history of HOEPA demonstrates that Congress enacted HOEPA to force the high cost mortgage market to police itself. *Bryant v. Mortgage Capital Res. Corp.*, 197 F.Supp.2d 1357, 1364 (N.D.Ga.2002) (citing S.Rep. No. 103–169, at 28 (1993), *reprinted in* 1994 U.S.C.C.A.N. 1881, 1912). Accordingly, Congress made assignees of second mortgage notes subject to all claims and defenses, whether under TILA or other law, that could be raised against the original lender.

In the instant matter, Plaintiffs allege that HOEPA gives them standing and permits them to assert claims against Defendants even though Defendants did not originate the loan.[18] The crux of their argument is based upon the following logic: Plaintiffs first assert that the injuries

---

**18.** Notably, Plaintiffs do not assert direct claims under HOEPA or TILA, but rather rely on HOEPA liability to maintain claims under the North Carolina Interest Statutes and the North Carolina Unfair and Deceptive Trade Practices Act.

of which they complain are based upon the second mortgage loan entered into with the originating lender, one of the institutions that comprise FirstPlus Group. Again, however, none of the institutions constituting FirstPlus Group are named Defendants in this case.

Nevertheless, Plaintiffs secondly point to HOEPA as a means for establishing standing to the extent that it states that "any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage ...." 15 U.S.C. § 1641(d)(1). Because Defendants are assignees of Plaintiffs' loan, Plaintiffs contend that Defendants are liable for any illegal acts of the loan originator.[19]

■ However, Plaintiffs' logic is flawed as they mistakenly focus on the language within HOEPA regarding "all claims and defenses." The language of subsection (1) of HOEPA provides in clear and unambiguous terms that assignees are subject to all claims and defenses under *any law* that a borrower could have asserted against the original lender. *Vandenbroeck v. Contimortgage Corp. and Greentree Fin. Servicing Corp.*, 53 F.Supp.2d 965, 968 (W.D.Mich.1999). However, this provision

merely eliminates the holder in due course defense [20] for assignees of certain high cost mortgages when the assignee holds the plaintiff's loan. This provision is not intended to bestow any rights upon the borrower nor constitute an independent basis of liability. *See, e.g., In re Rodrigues*, 278 B.R. 683, 688 (Bankr.D.R.I.2002); *Vandenbroeck*, 53 F.Supp.2d at 968; *In re Murray*, 239 B.R. 728, 733 (Bankr.E.D.Pa. 1999). By its terms, section 1641(d)(1) only applies if a plaintiff can assert a claim under some other law, and even then, it only affects a state law defense, that is the "holder in due course" defense, which a defendant assignee might raise against the holder of their loan. In other words, HOEPA only provides a basis of assignee liability against the actual holder of Plaintiffs' loan and even then, it only eliminates the holder in due course defense.

In sum, the only claims that are before this Court are those of named Plaintiffs against the named Defendants. Thus, Plaintiffs must demonstrate that they satisfy the requirements of standing vis-a-vis each Defendant. Since the named Plaintiffs fail to state which of any of the Defendants actually holds their loans, they fail to meet this test with respect to any of the Defendants. Moreover, Plaintiffs have not established an actual case of controversy between themselves and any of the Defendants.[21] Plaintiffs' class allegations, juridi-

---

**19.** One of Defendants' arguments is that Plaintiffs "completely ignore the fact that there is no plausible or rational interpretation of HOEPA's purported assignee liability provision that puts a *non-assignee* of a plaintiff's loan in the loan originator's shoes for liability purposes." (Reply Br. in Supp. of Defs.' Mot. to Dismiss at 6.) As already noted, Plaintiffs must have standing vis-a-vis each Defendant and cannot maintain their claims against non-assignee Defendants.

**20.** A holder in due course is one who takes an instrument for value, in good faith and without notice that it is overdue or has been dishonored or of any defense against or claim

to it on the part of any person. N.C. Gen. Stat. § 25-3-302(a)(1). As holders in due course, Defendants attain a preferred status whereby a holder in due course can enforce the instrument free from all claims and defenses. N.C. Gen.Stat. § 25-3-305. By removing the holder in due course defense, Plaintiffs, can assert any claim against their assignee that they could assert against the loan originator. *Carolina First Nat. Bank v. Douglas Gallery of Homes, Ltd.*, 68 N.C.App. 246, 251, 314 S.E.2d 801, 804 (1984).

**21.** Alternatively, Plaintiffs contend that Defendants "specifically did not file their purchases of loans in public records just so that Plain-

cal link argument, and reliance on HOEPA therefore do not and cannot conjure standing. Accordingly, because the Court lacks subject matter jurisdiction, Defendants' Motions to Dismiss are GRANTED.

## III. CONCLUSION

Because Defendants can demonstrate that the amount in controversy exceeds $75,000, Defendants established that the removal of the instant matter from state court on the basis of diversity jurisdiction was proper. Accordingly, Plaintiffs' Motion to Remand [Document # 8] is DENIED.

Moreover, because Plaintiffs cannot satisfy the requirements of standing with respect to any of Defendants, the Court lack subject matter jurisdiction over the instant matter. Consequently, all outstanding Motions to Dismiss by Defendants [Documents # 17, 19, 21] are GRANTED.

tiffs, like Mr. and Mrs. Dash, would be in the dark as to those assignments." (Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 12.) They argue that "Plaintiffs do not have the ability to articulate which Defendant holds mortgage notes that correspond to the specific loans of Plaintiffs and the Class." (*Id.*) But, Plaintiffs seem to support their contention by arguing

that because this is a putative class action, it would be inefficient for the Court to permit Defendants to enter and exit the litigation. Nonetheless, Plaintiffs, in their Complaint, fail to assert that any specific Defendant holds their loan. Accordingly, the Court finds that Plaintiffs have not satisfied the requirement of an actual case or controversy.