**Melvin LAWSON, Plaintiff,**

v.

**TYCO ELECTRONICS CORPORATION, Defendant.**

No. 1:02 CV 00823.

United States District Court, M.D. North Carolina.

Sept. 30, 2003.

Robert Alan Lauver, Robert A. Lauver, P.A., Kernersville, NC, John J. Krozen, Anderson Korzen & Associates, P.C., Kernersville, NC, for plaintiff.

Charles A, Edwards, Womble Carlyle Sandridge & Rice, Raleigh, NC, Lisa M. Drabik, Winston–Salem, NC, for defendant.

*MEMORANDUM OPINION*

OSTEEN, District Judge.

The matter before the court is Plaintiff Melvin Lawson's Motion to Remand. This retaliatory discharge action was initially filed in Forsyth County Superior Court, and Defendant subsequently filed a Notice of Removal, asserting diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff filed a timely Motion to Remand. Plaintiff's Motion to Remand is based on grounds that the amount in controversy requirement for federal diversity jurisdiction is not met and that the case is barred from removal pursuant to 28 U.S.C. § 1445(c). Plaintiff's Motion to Remand will be granted. The court is without subject matter juris-diction because of a failure to reach the amount in controversy requirement of 28 U.S.C. § 1332. Furthermore, had the requirements of § 1332 been met, remand would be compelled by 28 U.S.C. § 1445(c).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Melvin Lawson began working for Defendant Tyco Electronics Corporation ("Tyco") on September 2, 1969. On September 25, 2000, Plaintiff sustained an injury to his knee for which he filed a North Carolina workers' compensation claim. The claim was allowed. Plaintiff continued to work in a limited capacity until March 26, 2001, whereupon Plaintiff began preparation for surgery, as prescribed by his treating physician. From September 10, 2001, through early November 2001, Plaintiff resumed his regular job duties, but on November 5, 2001, became medically disabled due to aggravation of the injury to his knee. On February 5, 2002, Plaintiff's doctor informed him that he could resume working in a limited capacity beginning February 11, 2002. After receiving notification of the doctor's release, Tyco notified Plaintiff on February 5, 2002, that his position had been eliminated.

Plaintiff filed a complaint in Forsyth County Superior Court, alleging a violation of both the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen.Stat. § 97–240 *et seq.*, and public policy as expressed by the disability discrimination provision of North Carolina General Statute § 143–422.2. Plaintiff requested an award of compensatory, consequential, and punitive damages "in an amount in excess of $10,000." (Compl. ¶¶ 49, 50.) Additionally, Plaintiff demanded reinstatement in a new position, lost wages, and benefits.

## II. ANALYSIS

### A. Amount in Controversy

██ Because a case removed in violation of 28 U.S.C. § 1445(c) constitutes a procedural, and not jurisdictional, defect, *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1117 (5th Cir.1998), it is necessary to examine, first of all, whether the requirements of diversity jurisdiction are met.

All defendants have a statutory right to remove any civil action brought in state court over which "the district courts of the United States have original jurisdiction . . . ." 28 U.S.C. § 1441(a). Federal courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a). At issue in this case is whether the amount in controversy is sufficient to establish federal jurisdiction.

██ Courts have typically applied the "legal certainty" test in determining whether the amount in controversy requirement is met. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Shanaghan v. Cahill,* 58 F.3d 106, 112 (4th Cir.1995). Under this test, a plaintiff asserting federal jurisdiction has the burden of proving to a "legal certainty" that the claim is not less than the jurisdictional amount. *Shanaghan,* 58 F.3d at 112. In a removal case, the defendant, rather than the plaintiff, has the burden of proving that the jurisdictional requirements for removal are met. *Hoffman v. Vulcan Materials Co.,* 19 F.Supp.2d 475, 477 (M.D.N.C. 1998); *Griffin v. Holmes,* 843 F.Supp. 81, 84 (E.D.N.C.1993) (citing *Gafford v. General Elec. Co.,* 997 F.2d 150, 155 (6th Cir. 1993)). Additionally, the standard of proof used in determining the amount in controversy in removal cases is the more liberal "preponderance of the evidence" standard

rather than the "legal certainty" test—the defendant must show by a preponderance of the evidence that the jurisdictional amount is satisfied. *Dash v. FirstPlus Home Loan Owner Trust 1996–2,* 248 F.Supp.2d 489, 497 (M.D.N.C.2003) (applying the preponderance of the evidence standard); *Gwyn v. Wal–Mart Stores, Inc.,* 955 F.Supp. 44, 46 (M.D.N.C.1996) (noting that the trend is in favor of the preponderance of the evidence standard).

██ The amount in controversy is typically determined by "the status of the case as evidenced by the plaintiff's complaint." *St. Paul,* 303 U.S. at 292, 58 S.Ct. at 591. Because pleading rules in some states, including North Carolina, prohibit plaintiffs from initially pleading an exact amount in some circumstances, a determination of the amount in controversy from the face of the complaint is not possible. North Carolina requires that

> [i]n all negligence actions, and in all claims for punitive damages in any civil action, wherein the matter in controversy exceeds the sum or value of ten thousand dollars ($10,000), the pleading shall not state the demand for monetary relief, but shall state that the relief demanded is for damages incurred or to be incurred in excess of ten thousand dollars ($10,000).

N.C. Gen.Stat. § 1A–1, Rule 8(a)(2). In view of this limitation, federal courts have determined the amount of controversy by considering all evidence bearing on the issue. *See, e.g., Dash,* 248 F.Supp.2d at 498 (holding that the court could consider both a removal petition and party affidavit); *Gwyn,* 955 F.Supp. at 46 (ordering remand on the basis of plaintiff's postremoval stipulation on the amount of the claim).

██ In the present case, Plaintiff al-

leged damages "in excess of $10,000."[1] Specifically, the complaint alleges lost wages, pension rights, and Social Security benefits, in addition to consequential, compensatory, and punitive damages in excess of $10,000. Of all the damages claimed by Plaintiff, lost wages provides the surest means of determining actual loss. All of the other claimed damages are speculative and cannot provide a basis for finding jurisdiction. *Id.* (holding that a mere claim for punitive and compensatory damages in excess of $10,000 is speculative).

The amount in controversy will necessarily depend on the point in time the claim is valued. If the claim is valued at present, or at a hypothetical date of trial, the amount in controversy requirement would be satisfied on the basis of wage loss alone.[2] If the claim is valued as of the date the complaint was filed, though, jurisdiction is far less certain.

The court is generally limited to viewing the claim on the basis of the pleadings alone. *Dash v. FirstPlus Home Loan Owner Trust 1996–2,* 248 F.Supp.2d 489, 497 (M.D.N.C.2003); *Griffin v. Ford Consumer Fin. Co.,* 812 F.Supp. 614, 616 (W.D.N.C.1993). Although courts have considered evidence of damages subsequent to the complaint, such evidence has been largely in the nature of losses that were unknown at the time of pleading or for determining the value of the claim where the complaint did not state a definite amount. *See Dash,* 248 F.Supp.2d at 497 (allowing consideration of accountant's affidavit valuing claim); *Gwyn,* 955 F.Supp. at 46 (considering party stipulation as the "first evidence of the value of the claim"). No additional losses are specified by Defendant in the present case; only the accumulation of lost wages would make the claim definite. The Supreme Court has frowned upon the use of stipulations to manipulate the amount in controversy for jurisdictional purposes. *See St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 292, 58 S.Ct. 586, 592, 82 L.Ed. 845 (1938). However, stipulation has been used in certain cases where the amount in controversy is "indeterminate." *Gwyn,* 955 F.Supp. at 46; *Griffin,* 843 F.Supp. at 88. Viewed from the perspective of the complaint, the claim in this case is indeterminate.

Plaintiff submitted an affidavit contemporaneously with the Motion to Remand stating that the value of damages sought does not exceed $75,000. Considering that the amount in controversy is indeterminate from the face of the complaint, the court will acknowledge Plaintiff's stipulation. Because the requirements of diversity jurisdiction are absent, the court lacks subject matter jurisdiction over this case.

---

1. Whether Plaintiff was required to plead his claim in accordance with North Carolina General Statute § 1A–1, Rule 8(a)(2) is of no consequence. It is true that Rule 8(a)(2) prohibits claiming a value in excess of $10,000 in actions involving negligence or punitive damages, but it does not necessarily follow that a plaintiff is forbidden from pleading in such manner when a claim is for compensatory or consequential damages. Even if the rule is so construed, the burden is now on Defendant to establish the amount in controversy by a preponderance of the evidence. Defendant cannot shift the burden of proof on this issue by finding fault with Plaintiff's form of pleading.

2. Plaintiff's complaint states his average weekly wage as $947.89. Calculating lost wages from February 5, 2002, the date of termination, through August 16, 2002, the date the complaint was filed, produces a figure of approximately $30,000. The propriety of considering the accumulation of lost wages past the date of the complaint is highly questionable. Although at trial Plaintiff's lost wages may exceed the amount in controversy requirement, on this logic, every case claiming lost wages would eventually meet the requirement. *See Simmons v. PCR Tech.,* 209 F.Supp.2d 1029, 1032 (N.D.Cal.2002) (disallowing future projection of lost wages).

B. Applicability of 28 U.S.C. § 1445(c)

 Although the grounds stated above are a sufficient basis to order remand, it should be noted that remand is also compelled by the provision of 28 U.S.C. § 1445(c), which states that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."

This court has recently held that retaliatory discharge claims under the Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen.Stat. § 95–241 *et seq.* (2001), "arise under" 28 U.S.C. § 1445(c), thereby prohibiting removal. *Wiley v. United Parcel Serv., Inc.*, 227 F.Supp.2d 480, 488 (M.D.N.C.2002). The *Wiley* court noted that "REDA's genesis is in the workers' compensation laws of North Carolina." *Id.* at 487. Because of the close association between REDA claims and the workers' compensation laws, such claims fall within the prohibition against removal under 28 U.S.C. § 1445(c). *Id.*

## III. CONCLUSION

For the reasons set forth above, the court will grant Plaintiff's Motion to Remand.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.