870 P.2d 1252 (1994)
The PEOPLE of the State of Colorado, In the Interest of J.L.P., S.D.P., W.J.P. and C.P., Children, Appellants,
And Concerning M.L.P., Respondent-Appellee, and
Oglala Sioux Tribe, Intervenor-Appellee.
Nos. 92CA1007, 92CA1777.
Colorado Court of Appeals, Div. III.
February 10, 1994.
*1255 David Littman, P.C., Gaynell Gavin, Denver, guardian ad litem.
No appearance for respondent-appellee.
Fredericks, Pelcyger, Hester & White, Mark C. Tilden, Boulder, for intervenor-appellee.
Opinion by Judge TAUBMAN.
In this dependency and neglect proceeding concerning two children, W.J.P. and C.P., guardian ad litem, Gaynell Gavin (GAL), appeals the order of the juvenile court transferring jurisdiction to the Oglala Sioux (Tribe) tribal court under the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901, et seq. (1988). The GAL also appeals the juvenile court's order limiting the scope of the record and its refusal to hold a permanency planning hearing during the pendency of the appeal. We affirm.
In September 1990, the Denver Department of Social Services (DDSS) filed a dependency and neglect petition against M.L.P. (father) and S.R.P. (mother), involving their minor children, two of whom are W.J.P. and C.P., ages 7 and 6, respectively. Because the children were enrolled members or eligible for enrollment in the Oglala Sioux Tribe, see 25 U.S.C. § 1903(4) (1988), the Tribe was notified of the proceedings pursuant to the ICWA in October 1990. The children were adjudicated dependent and neglected and placed in the custody of DDSS in April of 1991. A treatment plan for the father was ordered. The mother is now deceased.
In approximately October 1991 the Tribe intervened and requested that jurisdiction be transferred to the tribal court. The GAL requested a plan regarding the care and custody of the children from the Tribe. She also attempted to obtain information regarding the Tribe's plans for the children through interrogatories and a request for production of documents. The Tribe refused to supply a custody plan or comply with the GAL's discovery requests because it took the position that these requests interfered with tribal sovereignty and the ICWA. The proceedings dealing with two older children were transferred to the Tribe by stipulation.
Later, the GAL sought to compel discovery and the Tribe requested a protective order. At a motions hearing, the juvenile court granted the Tribe's request for a protective order and requested additional briefing on whether good cause existed to prevent transfer of the matter to the Tribe. The juvenile court reserved the right to make findings on this matter based on the briefs *1256 and without conducting a subsequent hearing. It later found that good cause did not exist to retain jurisdiction and transferred the matter to the Tribe. The GAL appealed. In June 1992, a division of our court granted a stay of execution of transfer of jurisdiction pending appeal.
The GAL submitted her designation of the record to which the Tribe objected as being overbroad. A motions panel of this court remanded the motion for determination by the juvenile court. The juvenile court granted the Tribe's motion to exclude documents not related to the transfer of jurisdiction issue.
The GAL also requested a family interactional evaluation and a permanency planning hearing after the juvenile court had transferred jurisdiction to the Tribe and after a notice of appeal had been filed. The juvenile court denied the motion because it believed it lacked jurisdiction.

I. Transfer of Jurisdiction
Presenting an issue of first impression in Colorado, the GAL argues that the juvenile court improperly transferred jurisdiction to the Tribe when good cause existed for it to retain such jurisdiction. We disagree with the GAL's contention.

A. The Indian Child Welfare Act
The ICWA was enacted to prevent the separation of large numbers of Indian children from their families and tribes caused by adoption or foster care placement in non-Indian homes by state child welfare entities. The Congressional findings that were incorporated into the ICWA reflect the sentiment that no resource is more vital to the continued existence and integrity of Indian tribes than their children. 25 U.S.C. § 1901 (1988). Hence, the ICWA provides Indian tribes with jurisdiction to determine child placement and adoption.
At the core of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings. 25 U.S.C. § 1911 (1988) provides a dual jurisdictional scheme. 25 U.S.C. § 1911(a) (1988) establishes exclusive jurisdiction in the tribal courts for proceedings involving an Indian child "who resides or is domiciled within the reservation of such tribe...." Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989).
The provision applicable here, 25 U.S.C. § 1911(b) (1988), creates concurrent jurisdiction between the state in which the child resides and the tribe. It states:
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either party, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.
Thus, even for an Indian child who lives off reservation, the tribal court is still the preferred jurisdiction under the Act absent a showing of "good cause" to the contrary. See In re Robert T., 200 Cal.App.3d 657, 246 Cal.Rptr. 168 (1988).

B. Standard of Review
Whether good cause exists to retain jurisdiction is within the juvenile court's discretion. In re Dependency & Neglect of A.L., 442 N.W.2d 233 (S.D.1989); In re Wayne R.N., 107 N.M. 341, 757 P.2d 1333, 1335 (1988). This determination is necessarily made on a case-by-case basis, after careful consideration of all the circumstances of the case. In re Wayne R.N., supra. Thus, our review is limited to an examination of the record to determine whether substantial evidence supports the juvenile court's finding. In re Robert T., supra; In re Wayne R.N., supra.

C. Good Cause
Good cause is not defined in the ICWA. Instead, the Bureau of Indian Affairs *1257 (BIA) has issued guidelines for determining whether good cause exists. Department of Interior, Bureau of Indian Affairs, Guidelines for State Courts; Indian Child Welfare Custody ProceedingsPart III, 44 Fed.Reg. 67,583 (1979) (BIA Guidelines). Although the BIA followed the notice and comment rulemaking procedures of the federal Administrative Procedure Act, the Guidelines were not published as regulations out of deference to state and tribal courts and because they were not intended to have binding legislative effect. See BIA Guidelines, supra, at 44 Fed.Reg. 67,584. The Guidelines represent the BIA's interpretation of the Act, however, and are useful in interpreting its provisions. In re Robert T., supra. Furthermore, a number of states have addressed the transfer of jurisdiction issue using these Guidelines. Accordingly, we consider them to be persuasive authority here.
The burden of establishing good cause not to transfer jurisdiction is on the party opposing the transfer. In Interest of Armell, 194 Ill.App.3d 31, 141 Ill.Dec. 14, 550 N.E.2d 1060 (1990) (citing BIA Guidelines, supra). The party attempting to prevent the transfer must establish good cause with clear and convincing evidence that the best interests of the child would be injured by such a transfer. In re M.E.M., 195 Mont. 329, 635 P.2d 1313 (1981).
The BIA Guidelines state that good cause not to transfer jurisdiction exists when the child's tribe does not have a tribal court or when any of the following circumstances exist:
(i) The proceeding was at an advanced stage when the petition to transfer was received or the petitioner did not file the petition promptly after receiving notice of the hearing;
(ii) The Indian child is over twelve years of age and objects to the transfer;
(iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses;
(iv) The parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.
BIA Guidelines, 44 Fed.Reg. 67,591 (1979).

D. Proper Transfer of Jurisdiction
The GAL first contends that because the Tribe requested the transfer of jurisdiction at such a late stage in the proceedings good cause existed not to transfer. We disagree.
The BIA Guidelines provide that a transfer request shall be made promptly after receiving notice of the proceedings. BIA Guidelines, supra, at 44 Fed.Reg. 67,590. A number of courts have denied transfer on grounds of lack of timeliness, but we find those cases factually distinguishable from the situation here.
For example, in People in Interest of J.J., 454 N.W.2d 317 (S.D.1990), the tribe did not request transfer of jurisdiction until the case was on appeal and the Indian appellant had lost the custody fight in the trial court. The South Dakota Supreme Court denied the transfer request. Here, in contrast, the father was not attempting to find a more favorable forum and the proceedings before the juvenile court had not been completed when the tribe requested the transfer of jurisdiction.
The California Court of Appeals, in In re Robert T., supra, also denied transfer of jurisdiction because the tribe's request came 16 months after a permanency planning hearing and preadoption placement of the Indian child with an acceptable foster family under the ICWA. Here, the Tribe intervened one year after it received notice of the proceedings. Moreover, a permanency planning hearing had not been held, nor were the children placed in foster care that would have culminated in adoption in compliance with the ICWA. See 25 U.S.C. § 1915(a) and (b) (1988).
The record also demonstrates that the father had orally informed the court in *1258 September 1991, less than a year after the Tribe had been notified, that the Tribe intended to intervene and request transfer of jurisdiction. The BIA Guidelines state that a request for transfer made orally by a parent or the Tribe of the Indian child shall be reduced to writing by the court and made part of the record. BIA Guidelines, supra, 44 Fed.Reg. at 67,590. Thus, this notification can be construed as a prompt request for transfer of jurisdiction.
Furthermore, a finding of timeliness is merely one consideration in determining whether good cause exists, a decision ultimately within the juvenile court's discretion. Accordingly, since a determination of timeliness must be made on a case-by-case basis, we conclude that the juvenile court did not abuse its discretion in finding that the motion to transfer jurisdiction was timely.
Next, the GAL argues that undue hardship would result if the Tribe were to obtain jurisdiction. Again, we disagree.
The BIA Guidelines apply a modified doctrine of forum non conveniens. BIA Guidelines, supra, at 44 Fed.Reg. 67,591. The GAL contends that in the present case, most of the witnesses and evidence are in Denver. However, the GAL did not present any evidence on this point at the preliminary hearing or through affidavits attached to her trial memorandum opposing the transfer of jurisdiction, nor did she seek to obtain this type of information from the Tribe through discovery. Thus, the juvenile court did not abuse its discretion regarding this element of good cause in transferring jurisdiction.
Finally, the GAL argues that good cause existed to retain jurisdiction because it was not in the best interests of the children to transfer jurisdiction. Again, we disagree.
The primary purpose of the ICWA is to "protect the best interests of Indian children and to promote stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families...." 25 U.S.C. § 1902 (1988). Nevertheless, the "best interests of the child" standard as used in other custody proceedings, see generally § 14-10-124, C.R.S. (1987 Repl.Vol. 6A), is not one of the good cause factors enumerated in the BIA Guidelines and has only been applied in a few states. See People in Interest of Bird Head, 213 Neb. 741, 331 N.W.2d 785 (1983); In re Robert T., supra.
In contrast, some state courts have rejected the application of the best interest of the child standard used in custody disputes and have adopted the BIA Guidelines exclusively. See In re Interest of Armell, supra. Thus, in In re T.S., 245 Mont. 242, 801 P.2d 77, 80 (1990), the Montana Supreme Court stated:
[T]his `best interests of the child' test should not be confused with the `best interests of the child' test applied ... in custody determinations between parents in a dissolution. It should also not be confused with the criteria used to determine child abuse, neglect, and dependency and to terminate parent-child legal relationships....
Similarly, the Utah Supreme Court concluded that issues of bonding and ultimate placement of the child were not proper considerations when the court was deciding the issue of jurisdiction. In re Adoption of Halloway, 732 P.2d 962 (Utah 1986). There, the Utah court stated, "We must defer to the experience, wisdom, and compassion of the Navajo tribal courts to fashion an appropriate remedy. We hope that the tribal courts will consider ... the value of the stability in [the child's] placement and will recognize the strong bonds [the child] had developed with his adoptive parents." In re Adoption of Halloway, supra, at 972.
We adopt the reasoning contained in this line of cases because we conclude that the adoption of a best interests of the child standard would defeat the purpose of the ICWA.
The United States Supreme Court has interpreted 25 U.S.C. § 1911(b) to presume jurisdiction with the Tribe. Mississippi Band of Choctaw Indians v. Holyfield, supra. Thus, under the ICWA the determination *1259 of the best interests of the child lies with the Tribe. See In re Appeal of Pima County Juvenile Action, 130 Ariz. 202, 635 P.2d 187, 189 (1981), cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982) ("The Act is based on the fundamental assumption that it is in the Indian child's best interests that its relationship to the tribe be protected."). Accordingly, the juvenile court properly transferred jurisdiction without consideration of the elements of the best interests of the child set forth in § 14-10-124, C.R.S. (1987 Repl.Vol. 6B).
The GAL also argues that the application of the BIA Guidelines without consideration of the best interests of the child violates the Equal Protection Clause of the Fourteenth Amendment and Colo. Const., Art. II, § 25. However, we do not address this issue because it was raised for the first time in the reply brief. People v. Czemerynski, 786 P.2d 1100 (Colo.1990).

E. Failure to Hold a Hearing
The GAL further argues that the juvenile court erred when it failed to hold a hearing before determining whether good cause existed to retain jurisdiction. We disagree.
The GAL relies on In re G.L.O.C., 205 Mont. 352, 668 P.2d 235 (1983), which held that a hearing on the question of whether jurisdiction should be transferred is required to provide due process to those involved in the process. In In re G.L.O.C., the Indian child's indigent parent, who was also Indian, was not provided with counsel as required by the ICWA and was unable to challenge the Tribe's request for transfer of jurisdiction. The Montana Supreme Court determined that the father's due process rights had been violated since he could not participate in the transfer proceedings. Accordingly, the court vacated the district court's order transferring jurisdiction.
Here, unlike In re G.L.O.C., the father, GAL, and the tribe participated in preliminary arguments and briefing on the issue of transfer of jurisdiction. At the preliminary hearing, the juvenile court heard argument on the transfer of jurisdiction from each party. It then requested additional briefing on the issue of good cause. In its oral and written orders, the juvenile court reserved the right to rule on the transfer of jurisdiction issue without further hearings. None of the parties objected. Under the circumstances presented here, we conclude that due process was afforded to all parties, and we find no error in the juvenile court's transfer without further hearing.

II. Discovery
The GAL next contends that the juvenile court abused its discretion when it denied her discovery request and granted the Tribe's motion for protective order. The denial of discovery, she argues, effectively prevented her from obtaining any information which would demonstrate that good cause existed for the juvenile court to retain jurisdiction over the matter. We disagree.
Discovery is a matter squarely within a trial court's discretion. In re Marriage of Mann, 655 P.2d 814 (Colo.1982). Protective orders may be granted by a trial court to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. C.R.C.P. 26(c). Protective orders must be decided on the basis of the particular facts before the court. Curtis, Inc. v. District Court, 186 Colo. 226, 526 P.2d 1335 (1974).
Here, the juvenile court denied the discovery request and granted the protective order because it found that the information sought through discovery would be fundamentally unfair and burdensome to the Tribe:
[T]he tribal court has had little opportunity to evaluate the children, to develop a plan or to have much contact with the families involved. And so, to put the burden on them [sic] to establish a plan that would be better than the plan established by the state court would disadvantage them [sic] every time.
*1260 We agree with the trial court's analysis. Additionally, we agree with the Tribe's argument that the discovery request here would interfere with tribal sovereignty. See generally Fisher v. District Court, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976); Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) (when Congress has wished states to exercise jurisdiction over Indian tribes it has expressly granted that jurisdiction).
Our review of the interrogatories and request for production of documents convinces us that the GAL attempted to obtain information regarding the ultimate disposition of the proceedings by the Tribal Court. This discovery request is analogous to a discovery request attempting to obtain information on how the juvenile court would have resolved these issues. Just as such a request would have been improper to seek from the juvenile court, the GAL's discovery request infringed on the sovereignty of the Tribe to determine the outcome of the proceedings.
Indeed, as we have stated earlier, it is not the juvenile court's job under the good cause exception of the ICWA to resolve custody and placement issues, but to determine which court has jurisdiction to resolve these issues. Thus, we conclude the trial court properly exercised its discretion in granting a protective order in this case.

III. Juvenile Court's Limitation of the Record on Appeal
The GAL also argues that the juvenile court abused its discretion by granting the Tribe's motion to narrow the record on appeal which the GAL had designated pursuant to C.A.R. 10(a). We conclude that the juvenile court was not the proper forum for resolution of this issue, but that any error arising from the limitation it imposed is harmless error. See C.R.C.P. 61.
The purpose of C.A.R. 10 is to ensure that the appellate court will be given sufficient information to arrive at a just and reasoned decision. The record need not be all-inclusive. City of Aurora v. Webb, 41 Colo.App. 11, 585 P.2d 288 (1978).
C.A.R. 10(a)(1) designates certain documents which must be included in the record on appeal, "together with any other documents which by designation of either party or by stipulation are directed to be included...." Thus, an appellant has the right to designate whatever documents he or she believes pertinent to the appeal to be included in the record on appeal.
Further, C.A.R. 10(e) provides certain procedures for correction or modification of the record. Thus, disputes concerning whether the record truly discloses what occurred in the trial court, omissions, or misstatements may be corrected by the trial court. Significantly, however, "all other questions as to the form and content of the record shall be presented to the appellate court." C.A.R. 10(e).
Here, the GAL submitted a designation of record requesting "all papers, documents, motions, reports, court orders, and records regarding Case No. 90 JN 453, which is provided by Rule 10 of the Colorado Appellate Rules" and transcripts from certain hearings. The Tribe sought to exclude from the record on appeal documents which it did not believe related to the issues on appeal, namely, all documents not related to whether the juvenile court had properly transferred jurisdiction to the Tribe and whether the juvenile court had correctly denied the GAL's discovery requests. It did not seek to exclude portions of the record based upon omissions, misstatements, or the truth of what occurred in the trial court. A motions panel of our court remanded the objection to the juvenile court. Granting the Tribe's motion, the juvenile court limited the record to only those records and transcripts relevant to these issues.
Under the circumstances presented, we conclude that the procedure followed here resulted only in harmless error.
C.A.R. 10(e) provides that, except for disputes concerning the truth of what occurred in the trial court, omissions, or misstatements, all other questions regarding the form and content of the record "shall be presented to the appellate court." In light of this language, we conclude that, rather than remanding to the juvenile court, we should *1261 have reviewed the record pursuant to the Tribe's motion to limit the record.
Nevertheless, the record designated on appeal has afforded us full and complete opportunity to consider the other issues the GAL has raised on appeal, the propriety of transfer of jurisdiction to the Tribe, and whether the juvenile court properly granted the Tribe's motion for protective order limiting discovery. Thus, we have been able to determine these issues with all relevant documents and transcripts at our disposal and supplementation of the record at this time to include additional documents from an earlier point in this litigation would serve no useful purpose. Accordingly, any error arising from our improperly having the juvenile court address the matter was harmless.

IV. Refusal to Hold a Permanency Planning Hearing
Finally, the GAL argues that the juvenile court improperly denied her motion to conduct a family interactional evaluation and hold a permanency planning hearing. We disagree.
After an appeal of a final judgment has been perfected, the trial court is without jurisdiction to entertain any motion or any order affecting the judgment. People v. District Court, 638 P.2d 65 (Colo.1981).
Here, the juvenile court denied the GAL's motions because it did not want to take "further action which would impact the finality of that [transfer of jurisdiction] decision and, possibly the decision of the Court of Appeals." Such ruling was proper.
Furthermore, if the juvenile court had conducted a permanency planning hearing during the appeal, that hearing could have interfered with an issue on appeal: whether good cause existed to retain jurisdiction. See In re Robert T., supra (timely request to transfer jurisdiction should precede the permanency planning hearing).
Judgment affirmed.
CRISWELL and DAVIDSON, JJ., concur.