**In the Matter of J.C.T., a minor child, and C.A.H., Petitioner–Appellant,**

v.

**THREE AFFILIATED TRIBES, Intervenor–Appellee.**

No. 05CA1065.

Colorado Court of Appeals, Div. II.

Aug. 10, 2006.

Rehearing Denied Oct. 26, 2006.

Paula C. Young, Guardian Ad Litem.

Holme, Roberts, & Owen, LLP, Richard L. Gabriel, Timothy M. Reynolds, David A. Tonini, Denver, Colorado, for Petitioner–Appellant.

American Indian Law Clinic, Jill E. Tompkins, Boulder, Colorado, for Intervenor–Appellee.

Opinion by Judge ROTHENBERG.

C.A.H. appeals the probate court order denying her petition for permanent guardianship of J.C.T., a minor. The issue in this case is whether the probate court exceeded its subject matter jurisdiction during proceedings involving J.C.T.'s guardianship by conducting what amounted to a de facto adoption proceeding. Because we conclude the probate court exceeded its jurisdiction by exercising jurisdiction that is exclusively vested in the juvenile court, we vacate the probate court's order and remand with directions.

I.

J.C.T. was born on February 25, 1997 to a sixteen-year-old mother, M.T. In March 1998, the probate court appointed C.A.H. as the infant's legal guardian. M.T. consented to the appointment.

Several months later, M.T. filed a petition requesting that the probate court dissolve the guardianship and return J.C.T. to her. The probate court appointed a guardian ad litem (GAL) to investigate C.A.H.'s fitness and set a hearing on M.T.'s request to dissolve the guardianship. Following her investigation, the GAL concluded C.A.H. was fit to be J.C.T.'s guardian. M.T. failed to appear at the hearing on her petition to dissolve the guardianship, and the probate court denied her petition. Shortly thereafter, the court terminated the GAL's appointment.

C.A.H. married, and the family moved to Georgia. In 2002, after J.C.T. had lived with C.A.H. for four years, C.A.H.'s mother and stepfather, who lived in Colorado, initiated a

proceeding in Georgia to obtain custody of J.C.T. and C.A.H.'s daughter, both of whom were visiting in Colorado.

The Denver probate court reappointed the GAL and instructed her to enter an appearance in Georgia. The Georgia court entered a directed verdict in favor of C.A.H. and returned custody of her daughter to her. However, the Georgia court refused jurisdiction over J.C.T. and deferred to the Denver probate court. Thereafter, the probate court issued an order suspending C.A.H.'s guardianship and appointing C.A.H.'s mother and stepfather as temporary co-guardians of J.C.T.

In 2003, the Mandan, Hidatsa, and Arikara Nation, also known as the Three Affiliated Tribes (Tribes), located in New Town, North Dakota, moved to intervene, asserting they had standing because J.C.T. is an enrolled member and therefore is an Indian child for purposes of the Indian Child Welfare Act (ICWA), 92 Stat. 3069, 25 U.S.C. § 1901, et seq. *See* 25 U.S.C. § 1911(c) ("In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding."); *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *B.H. v. People in Interest of X.H.*, 138 P.3d 299 (Colo.2006). The parties stipulated to the granting of the motion to intervene, and the magistrate granted the motion.

The Tribes also filed a motion to transfer jurisdiction to the tribal court. In an October 27, 2003, order, the magistrate found that once the birth mother's "ability to provide a safe home for [the child] was questioned . . . the provisions of the ICWA became applicable." However, the magistrate denied the motion to transfer, relying on 25 U.S.C. § 1911(b), which provides, as relevant here:

> In any State court proceeding for the foster care placement of, or termination of parental rights to, *an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe,* absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.

(Emphasis added.)

The magistrate found that J.C.T. was an Indian child not domiciled or residing within the reservation of the Indian child's tribe, and that there was "good cause" *not* to transfer jurisdiction to the tribal court. *See People in Interest of J.L.P.*, 870 P.2d 1252 (Colo.App.1994)(addressing "good cause"). The Tribes have not appealed that ruling.

In 2004, the GAL filed a petition to terminate the appointment of C.A.H.'s mother as temporary guardian (C.A.H.'s stepfather had died in the interim) and to appoint A.B. as successor guardian. The probate court suspended C.A.H.'s mother's temporary guardianship and appointed A.B. as the substitute temporary guardian. J.C.T. lived with A.B. from August 2004 through March 2005.

In 2005, the GAL filed a motion to limit C.A.H.'s contact with J.C.T. and a motion for emergency relief, alleging that A.B. had violated the probate court's order by discussing J.C.T.'s permanent placement and relationship with C.A.H. After a hearing, the probate court entered an order limiting telephone contact among C.A.H., A.B., and J.C.T. The court ordered that the GAL bring J.C.T. to his therapy appointments and that A.B. make him available to the GAL for a weekend visit with a family who was interested in serving as successor guardian, and eventually adopting J.C.T.

On March 11, 2005, the probate court held a hearing regarding C.A.H.'s suspended guardianship and allowed C.A.H. to present evidence regarding her qualifications to adopt J.C.T. or to be appointed his permanent guardian. At the close of the hearing, the probate court orally ordered that A.B. be removed as J.C.T.'s temporary substitute guardian, declared him a ward of the court, and appointed the GAL as "guardian designee." In a written order dated April 7, 2005, the probate court also denied C.A.H.'s petition for appointment as J.C.T.'s guardian,

which effectively terminated C.A.H.'s previously suspended guardianship.

C.A.H. appeals from the probate court's order. Answer briefs were filed by the GAL and the Tribes, and we refer to these parties as appellees. Both appellees have urged us to uphold the ruling of the probate court terminating C.A.H.'s guardianship.

## II.

■ C.A.H. contends the probate court exceeded its subject matter jurisdiction in denying her petition for guardianship by conducting a de facto adoption proceeding. We agree.

■ Whether a court has subject matter jurisdiction is a question of law subject to de novo review. *City of Colorado Springs v. Conners*, 993 P.2d 1167, 1171 (Colo.2000).

■ Subject matter jurisdiction is defined as a court's power to resolve a dispute in which it renders judgment. *Trans Shuttle, Inc. v. Pub. Utils. Comm'n*, 58 P.3d 47 (Colo.2002); *Ashton Props., Ltd. v. Overton*, 107 P.3d 1014 (Colo.App.2004). A court has subject matter jurisdiction if "the case is one of the type of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority." *Horton v. Suthers*, 43 P.3d 611, 615 (Colo. 2002) (quoting *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo.1986)).

The probate court's jurisdiction is limited to those matters conferred by the Colorado Constitution and by statute. *See* Colo. Const. art. VI, § 9(3); § 13–9–106, C.R.S. 2005.

Article VI, § 9(3) of the Colorado Constitution provides:

In the city and county of Denver, exclusive original jurisdiction in all matters of probate, settlements of estates of deceased persons, appointment of guardians, conservators and administrators, and settlement of their accounts, the adjudication of the mentally ill, and such other jurisdiction as may be provided by law shall be vested in a probate court. . . .

In Denver, the probate court has original and exclusive jurisdiction of the granting of letters of guardianship and the administration of guardianship of minors. Section 13–9–103(1)(e)–(f), C.R.S.2005. However, the probate court has no jurisdiction to terminate parental rights. Such jurisdiction is within the exclusive jurisdiction of the juvenile court. Section 19–1–104(1)(d), C.R.S.2005. Adoption proceedings are also within the exclusive jurisdiction of the juvenile court. Section 19–1–104(1)(g), C.R.S.2005.

Further, when parents are unable or unwilling to take proper care of a child, the county department of social services is authorized to investigate the child's circumstances, *see* § 19–3–501(1), C.R.S.2005, and if necessary, to file a petition in dependency or neglect concerning the child. *See* §§ 19–3–304, 19–3–307, C.R.S.2005. Dependency and neglect proceedings are commenced by the filing of a petition by the state, § 19–3–500, C.R.S.2005, and the juvenile court also has exclusive jurisdiction over such proceedings. Section 19–1–104(1)(b), C.R.S.2005.

Section 19–3–102(1), C.R.S.2005, provides, as relevant here, that

[a] child is neglected or dependent if:

. . .

(c) [t]he child's environment is injurious to his or her welfare; [or]

. . .

(e) [t]he child is homeless, without proper care, or not domiciled with his or her parent, guardian, or legal custodian through no fault of such parent, guardian, or legal custodian.

It is undisputed that J.C.T. never knew his father, that he had not interacted with his biological mother for nearly eight years, and that her address was unknown at the time of the hearing. As a result, J.C.T.—who is now nine years—old has spent the majority of his life under the supervision of the probate court living with temporary guardians. After the GAL made several failed attempts to place the child with adoptive families—including an attempted placement with the sister of a court-appointed expert—the probate court directed the GAL to find a permanent

home for J.C.T. The GAL testified that her primary focus was adoption.

The probate court's focus on adoption is also evident. On March 11, 2005, it held a hearing on C.A.H.'s petition for appointment as J.C.T.'s guardian. In denying the petition, the probate court stated that the prospect of adoption was a significant factor in reaching its decision:

> With the assistance of an adoption agency, the [GAL] has located a family who would like to adopt J.T.C. In [one expert's] opinion, [J.C.T.] is capable of bonding successfully with a new family. [J.C.T.] has enjoyed his visits with this family and there is every indication that they can meet his needs. [J.C.T.] would be the youngest member of the family, with one older sibling living at home. The family is well aware of his special needs and willing to attend them. The mother is part Indian and was, herself, adopted at age eight.

The probate court further stated that "[a]fter careful consideration of [J.C.T.'s] needs, the likelihood that [C.A.H.] cannot meet his needs, and the potential for a successful adoption elsewhere, the [c]ourt finds that the balance tips heavily against placement with [C.A.H.] and in favor of placement with the family recommended by the [GAL]."

The effect of the probate court's order and its directions to the GAL were to facilitate the adoption process by finding an adoptive family for J.C.T. and placing him there. We conclude these actions exceeded the administration of J.C.T.'s guardianship and are properly within the authority and the expertise of the juvenile court.

■ Furthermore, the probate court terminated C.A.H.'s guardianship of J.C.T., leaving him in a legal limbo. The court took the unusual step of appointing itself as J.C.T.'s guardian "until the proposed adoptive family's guardianship petition [could] be heard," and appointing the GAL as "guardian designee."

We conclude such an appointment was improper because there is a conflict of interest between the GAL, who is charged with the responsibility to advocate for and to protect the best interest of the child, and the child's guardian, who seeks to retain custody and may also seek to adopt the child.

The probate code also defines a guardian as follows, perhaps in recognition of this conflict of interest:

> "Guardian" means *an individual* at least twenty-one years of age, resident or nonresident, who has qualified as a guardian of a minor or incapacitated person pursuant to appointment by a parent or by the court. The term includes a limited, emergency, and temporary substitute guardian *but not a guardian ad litem.*

Section 15–14–102(4), C.R.S.2005 (emphasis added).

We therefore conclude neither the probate court nor the GAL is authorized to serve as J.C.T.'s guardian.

■ In summary, it is undisputed that at the time of the probate court's order, J.C.T. was not domiciled with a parent, and we have concluded he did not have an authorized legal guardian. Because he has no permanent home or authorized legal guardian, there are grounds to refer the matter to the juvenile court, which has the authority to assume jurisdiction and after an adjudicatory hearing, *see* § 19–3–505, C.R.S.2005, to determine whether he is a neglected or dependent child within the meaning of § 19–3–102(1)(e), C.R.S.2005. The juvenile court also has the authority to order the department of social services to conduct a preliminary investigation "to determine whether the interests of the child or of the community require that further action be taken." Section 19–3–501(1), C.R.S.2005.

Contrary to appellees' contention, the fact that C.A.H. contacted the department of social services a few years ago regarding J.C.T.'s welfare and the department declined to initiate proceedings at that time does not mean J.C.T. is not currently a dependent or neglected child.

Appellees' reliance on *L.L. v. People,* 10 P.3d 1271 (Colo.2000), is also misplaced. There, the trial court granted permanent guardianship of the petitioner-mother's children to foster parents and suspended a majority of the petitioner's parental rights. The

Colorado Supreme Court rejected the mother's argument that her due process rights were violated and that the trial court's order was tantamount to a de facto adoption. The supreme court reasoned that the custody order was not a total termination of the mother's parental rights.

However, unlike in *L.L.*, J.C.T.'s parents were not involved in the proceedings, they did not challenge the probate court's order, and their due process rights were not at issue. J.C.T. has never met his father, and his mother, in effect, has abandoned him.

 Nor are we persuaded by appellees' argument that the probate court had jurisdiction to address concerns regarding the treatment of J.C.T. under § 15–14–210(2), C.R.S. 2005. That statute provides that a "ward or a person interested in the welfare of a ward may petition for any order that is in the best interest of the ward." Section 15–14–210(2). However, it does not confer jurisdiction upon the probate court to enter de facto adoption orders.

We therefore conclude that the probate court exceeded its jurisdiction by conducting a de facto adoption hearing, *see* §§ 13–9–103, 19–1–104(1)(g), and that the guardianship action should be certified forthwith to the juvenile court for further orders. *See* § 19–1–104(4)(b), C.R.S.2005 ("The district court at any time may request the juvenile court to make recommendations pertaining to guardianship or legal custody."); Orrelle R. Weeks & Pamela A. Gordon, *Permanency Planning in Dependency Cases*, 20 Colo. Law. 717, 719 (1991) ("[T]he guardianship action can be certified to the dependency court, just like any custody action.").

We are not in a position to remove the current GAL. However, the juvenile court may wish to consider portions of the record indicating that, while the GAL is obviously concerned about the welfare of J.C.T., that concern has grown to the point where it has colored her judgment and may have caused her to lose the objectivity necessary to be an effective GAL on J.C.T.'s behalf.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

In light of our conclusions, we need not consider C.A.H.'s remaining contentions.

The order of the probate court is vacated, and the case is remanded to the probate court with directions to certify the action forthwith to the juvenile court for such orders as the juvenile court deems appropriate. The order of the probate court shall remain in effect as to J.C.T.'s current living situation until the juvenile court accepts jurisdiction and enters new orders.

Judge ROY and Judge METZGER * concur.