The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 30, 2019

## 2019COA85

**No. 18CA1478,** *People in the Interest of L.R.B.* **— American
Indian Law — ICWA — Indian Tribe Jurisdiction Over Indian
Child Custody Proceedings — Transfer of Proceedings; Appeals
— Final Appealable Order — Collateral Order Doctrine**

A division of the court of appeals concludes that a juvenile
court's order denying a tribe's request to transfer jurisdiction to a
tribal court is a final, appealable order based on the collateral order
doctrine.

COLORADO COURT OF APPEALS                                    **2019COA85**

Court of Appeals No. 18CA1478
Montezuma County District Court No. 15JV9
Honorable Douglas S. Walker, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of L.R.B., S.B.B., and K.B.B., Children,

and Concerning Navajo Nation,

Intervenor-Appellant,

and

E.S. and R.S.,

Intervenors-Appellees.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division A
Opinion by JUDGE FURMAN
Dunn and Welling, JJ., concur

Announced May 30, 2019

John Baxter, County Attorney, Ian MacLaren, Special Assistant County
Attorney, Cortez, Colorado, for Petitioner-Appellee

Beth Padilla, Guardian Ad Litem

James Shaner, Cortez, Colorado; Keith Andrew Fitzgerald, Moab, Utah, for
Intervenor-Appellant

The Law Office of Jill M. Carlson, LLC, Jill M. Carlson, Cortez, Colorado, for
Intervenors-Appellees

¶ 1     In this post-termination of parental rights proceeding, the Montezuma County Department of Social Services (Department) and the guardian ad litem (GAL) of L.R.B., S.B.B., and K.B.B. (the children) stipulated to the Navajo Nation's request to transfer jurisdiction to the tribal court for preadoptive and adoptive placement proceedings.  But the children's former foster parents, E.S. and R.S., who filed petitions to adopt the children, opposed the transfer.

¶ 2     After a contested hearing, the juvenile court denied the Navajo Nation's request to transfer jurisdiction.  The court recognized that the transfer section of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. § 1911(b) (2018), generally permits a tribe to request a transfer of jurisdiction.  But the court concluded that the plain language of this section does not apply to preadoptive and adoptive placement proceedings and, even if it did apply, the former foster parents presented evidence of good cause to deny the request.

¶ 3     We disagree based on the plain language of the Children's Code.  Section 19-1-126(1), (4)(a), and (4)(b), C.R.S. 2018 — our state's ICWA-implementing legislation as it existed at the time of this hearing — applies transfer of jurisdiction requests to

1

preadoptive and adoptive placement proceedings. It also places the burden of proof on the party opposing the transfer. Because the former foster parents lacked standing to oppose the Navajo Nation's request, the juvenile court erred in entertaining their opposition.

¶ 4　Accordingly, we reverse the juvenile court's order and remand for the juvenile court to (1) transfer jurisdiction to the Navajo Nation's tribal court and (2) vacate and dismiss the former foster parents' petitions to adopt.

## I. Post-Termination Proceedings

¶ 5　It is undisputed that the children are registered members of the Navajo Nation and, therefore, Indian children under ICWA. *See* 25 U.S.C. §§ 1901 to 1963 (2018).

¶ 6　The juvenile court entered judgment terminating the parent-child legal relationship between the children and their parents, and a division of this court affirmed the judgment. *People in Interest of L.R.B.*, (Colo. App. No. 17CA0607, Feb. 1, 2018) (not published pursuant to C.A.R. 35(e)). Following termination, the Department filed a motion to remove the children from the home of the former foster parents and place them in an ICWA preferred placement. The court granted the motion.

¶ 7     The Navajo Nation then moved to intervene; the juvenile court granted the motion.  While the parents appealed the termination of their parental rights, the Navajo Nation moved to transfer jurisdiction from the state court to the tribal court under section 25 U.S.C. § 1911(b).  The Department and the GAL did not oppose this motion.  But the juvenile court denied the Navajo Nation's motion because the court lacked jurisdiction to act while the case was on appeal.  Yet, it noted that if it had jurisdiction, it would have concluded that good cause existed to deny transfer based on the age of the case.

¶ 8     Later, the former foster parents filed petitions to adopt the children; the Navajo Nation and the Department opposed the petitions.  The juvenile court also "re-joined" the former foster parents to the dependency and neglect case under C.R.C.P. 20.  The court did so based on the former foster parents' petitions to adopt the children.

¶ 9     After our court issued the mandate on the denial of the parents' appeal, the Navajo Nation again moved to transfer jurisdiction in the dependency and neglect case.  The Navajo Nation asserted that the tribal court was the proper venue for preadoptive

and adoptive placement proceedings regarding the children. The Department and the GAL stipulated to the Navajo Nation's motion, but the former foster parents opposed it.

¶ 10 After a hearing, in which the Navajo Nation, the Department, the GAL, and the former foster parents participated, the juvenile court denied the Navajo Nation's motion to transfer jurisdiction. The court also ordered the Department to place the children with the former foster parents pending the final hearing on their petitions to adopt.

¶ 11 The Navajo Nation and the Department moved to stay the juvenile court's order denying the motion to transfer jurisdiction and placing the children with the former foster parents. But the court denied the motion to stay.

¶ 12 The Navajo Nation then filed in this court a notice of appeal and an emergency motion for a stay and requested that the children be kept in their current foster home rather than be placed with the former foster parents. A division of this court granted the stay and issued a show cause order asking the parties to address the finality of the court's order denying the motion to transfer jurisdiction. To address the order's finality, the division asked the parties to

4

respond to several questions, including whether the order was immediately appealable and whether there was any other basis for the court to exercise jurisdiction over this appeal.

¶ 13    We first address finality.

## II.  Finality

¶ 14    We conclude that a juvenile court's order denying a tribe's request to transfer jurisdiction to a tribal court is a final, appealable order based on the collateral order doctrine.

¶ 15    "Because we must always satisfy ourselves that we have jurisdiction to hear an appeal, we may raise jurisdictional defects sua sponte, regardless of whether the parties have raised the issue." *People v. S.X.G.*, 2012 CO 5, ¶ 9.  This court has "no authority to expand [our] appellate jurisdiction [as] specified by" the General Assembly, *Holdridge v. Bd. of Educ.*, 881 P.2d 448, 450-51 (Colo. App. 1994), and we cannot "modify the jurisdiction granted [us] by statute." *People v. Meyers*, 43 Colo. App. 63, 64, 598 P.2d 526, 527 (1979).

¶ 16    Once the General Assembly establishes a statutory right of judicial review, "such review must be sought in strict compliance with the mandatory provisions of the statute"; otherwise, the court

does not have jurisdiction "to act." *Mile High United Way, Inc. v. Bd. of Assessment Appeals*, 801 P.2d 3, 5 (Colo. App. 1990); *accord Barber v. People*, 127 Colo. 90, 95, 254 P.2d 431, 434 (1953) ("[I]n an action which is entirely statutory, the procedure therein prescribed is the measure of the power of the tribunal to which jurisdiction of causes arising under the statute is given.").

¶ 17    Section 19-1-109, C.R.S. 2018, of the Children's Code governs our review of dependency and neglect proceedings. *People in Interest of R.S. v. G.S.*, 2018 CO 31, ¶ 16. Regarding our review of these proceedings,

> [s]ubsection (1) [of section 19-1-109] states that an appeal may be taken from "any order, decree, or judgment," "as provided in the introductory portion to section 13-4-102(1), C.R.S." § 19-1-109(1). In turn, section 13-4-102(1) provides that the court of appeals shall have initial jurisdiction over appeals from "final judgments" of district courts, including juvenile courts that preside over dependency or neglect proceedings.

*Id.* (footnote omitted).

¶ 18    "A final judgment is one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of

6

the parties involved in the proceeding." *People in Interest of S.M.O.*, 931 P.2d 572, 573 (Colo. App. 1996) (citing *Harding Glass Co. v. Jones*, 640 P.2d 1123 (Colo. 1982)); *see G.S.*, ¶ 37.

¶ 19   Generally, a court's order denying a motion to transfer jurisdiction does not "end[] the particular action in which it is entered, leaving nothing further for the court pronouncing it to do." *S.M.O.*, 931 P.2d at 573. This is so because the denial, by its very nature, means that continued proceedings are to occur in the current forum. *G.S.*, ¶ 37. And here, continued proceedings are to occur because the juvenile court has retained jurisdiction to consider the preadoptive and adoptive placements of the children.

¶ 20   But special considerations are in play when a court addresses a request by an Indian tribe to transfer jurisdiction to the tribal court because tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories. *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 507 (1991); *see Cash Advance & Preferred Cash Loans v. State*, 242 P.3d 1099, 1106 (Colo. 2010). Tribal sovereignty is an inherent, retained sovereignty that pre-dates European contact, the formation of the United States, the United

7

States Constitution, and individual statehood. *Cash Advance*, 242 P.3d at 1107. And, under ICWA, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and . . . the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe." 25 U.S.C. § 1901(3). Delaying appellate review of the juvenile court's order would also imperil the Navajo Nation's interest in protecting children who are members of or eligible for membership in the tribe, particularly at the preadoptive and adoptive stages of the case.

¶ 21    Thus, we apply the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (There are some decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.").

¶ 22    The collateral order doctrine permits — in limited circumstances — appellate review of an interlocutory order despite its non-final nature. *U.S. Taekwondo Comm. v. Kukkiwon,* 2013

COA 105, ¶ 12. This doctrine takes "a 'practical construction' of the finality require[ment] . . . and permits, under highly circumscribed situations, interlocutory review of a trial court ruling even if the ruling is not the last decision issued in the case." *Id.* (quoting *Will v. Hallock*, 546 U.S. 345, 349 (2006)); *see also Paul v. People*, 105 P.3d 628, 631-32 (Colo. 2005) (noting that the Colorado supreme court has not decided whether the collateral order doctrine applies to final judgments under C.A.R. 1(a)).

¶ 23    Several cases support our application of the collateral order doctrine to a denial of a tribe's request to transfer jurisdiction. *See, e.g., In re Children of Shirley T.*, 199 A.3d 221, 224 n.6 (Me. 2019) (considering denial of a motion to transfer jurisdiction under ICWA "pursuant to the collateral order exception to the final judgment rule"); *see also In re Interest of Brittany C.*, 693 N.W.2d 592, 602 (Neb. Ct. App. 2005) ("We conclude that the trial court's orders denying the requests to transfer jurisdiction affected a substantial right in a special proceeding and were, therefore, final, appealable orders."); *In re Adoption of A.B.*, 245 P.3d 711, 722 (Utah 2010) (stating the Navajo Nation could have appealed "the order denying the Nation's motion for transfer of jurisdiction over the children").

9

¶ 24 "Pursuant to the collateral order doctrine, to be immediately appealable a decision must '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" *U.S. Taekwondo Comm.*, ¶ 13 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). Regarding the third condition, "the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (quoting *Will*, 546 U.S. at 352-53).

¶ 25 We conclude that the juvenile court's order denying the Navajo Nation's motion to transfer jurisdiction satisfies all three requirements of the collateral order doctrine.

¶ 26 First, the order "conclusively determine[d]" the disputed issue of whether the Navajo Nation has jurisdiction over preadoptive and adoptive placement proceedings concerning the children. *U.S. Taekwondo Comm.*, ¶ 13.

¶ 27 Second, the order resolved an "important issue completely separate from the merits." *Id.* We remain cognizant that the

10

underlying merits of this case involve the children's adoption — a matter of great public importance. *See, e.g.,* § 19-1-102(1)(d), C.R.S. 2018 (The Children's Code is meant to ultimately "secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society."). But the question at issue, whether the juvenile court erred by denying transfer of jurisdiction to the Navajo Nation, is separate from the ultimate resolution of the former foster parents' adoption proceeding. And resolution of this proceeding will not address the validity of the juvenile court's order denying transfer.

¶ 28    Third, the order is "effectively unreviewable on appeal," *U.S. Taekwondo Comm.*, ¶ 13, because delaying review would "imperil a substantial public interest," *Mohawk*, 558 U.S. at 107 (quoting *Will*, 546 U.S. at 352-53). Congress has told us that protecting Indian children is vital to the continued existence and integrity of Indian tribes and that "it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families . . . ." 25 U.S.C. § 1902 (2018); *see Mohawk*, 588 U.S. at 107. While a tribe may challenge

the denial of a motion to transfer jurisdiction following a final adoption decree, the children will have been placed in permanent homes. And if it is determined at that time that the court erroneously denied the motion to transfer jurisdiction, the children's permanency would be seriously disrupted.

¶ 29 Accordingly, a juvenile court's order denying a tribe's motion to transfer jurisdiction in a proceeding involving an Indian child is an interlocutory order that may be immediately appealed under the collateral order doctrine. We therefore conclude that we have jurisdiction over the order on appeal and that the appeal may proceed.

¶ 30 We next address the question of standing.

### III. Standing

¶ 31 We conclude that the former foster parents lack standing in the dependency and neglect case to oppose the Navajo Nation's motion to transfer jurisdiction.

¶ 32 Whether a party has standing is a question of law that we review de novo. *Boudette v. State*, 2018 COA 109, ¶ 15.

¶ 33 "Standing is a threshold issue that must be satisfied in order to decide a case on the merits." *Ainscough v. Owens*, 90 P.3d 851,

12

855 (Colo. 2004).  To have standing, a party must have (1) suffered an injury in fact (2) to a legally protected interest.  *C.W.B. v. A.S.*, 2018 CO 8, ¶ 18.  The legally protected interest requirement recognizes that "parties actually protected by a statute or constitutional provision are generally best situated to vindicate their own rights."  *Id.* (quoting *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 437 (Colo. 2000)).

¶ 34    We need not decide whether the former foster parents have standing to oppose the motion to transfer jurisdiction in the adoption cases because resolution of the jurisdiction question in this dependency and neglect case could result in vacating and dismissing the former foster parents' petitions to adopt.  *See* § 19-3-205(1), C.R.S. 2018; *People in Interest of L.M.*, 2018 CO 34, ¶ 38 (noting a "preference for addressing issues relating to a child's status under the provisions of Article 3" when a dependency and neglect proceeding is pending).  We thus consider whether the former foster parents have standing to oppose the motion in the dependency and neglect case.

¶ 35    We conclude that the former foster parents lack standing to oppose the transfer of jurisdiction for three reasons.  First, the

13

former foster parents no longer have intervenor status. Foster parents may intervene as a matter of right and fully participate in dependency and neglect proceedings if "the child [is] in their care for more than three months" and they "have information or knowledge concerning the care and protection of the child." § 19-3-507(5)(a), C.R.S. 2018; *see People in Interest of O.C.,* 2013 CO 56, ¶¶ 16, 19-20; *A.M. v. A.C.,* 2013 CO 16, ¶ 20 ("Foster parents who meet the required statutory criteria to intervene may participate fully in the termination hearing without limitation."). But the former foster parents here do not meet these criteria. True, they properly intervened under section 19-3-507(5)(a), following adjudication and while the children were in their care. Yet, once the children were removed from their home following termination of parental rights, they no longer had intervenor status.

¶ 36    Second, the former foster parents do not have a constitutionally protected liberty interest in the continuation of their relationships with the children. *See C.W.B.,* ¶ 26 (stating that section 19-3-507(5)(a) does not automatically confer standing to foster parents to appeal a judgment denying the termination

14

motion); *M.S. v. People*, 2013 CO 35, ¶ 21; *People in Interest of A.W.R.*, 17 P.3d 192, 197 (Colo. App. 2000).

¶ 37     Third, civil joinder rules cannot confer standing in this case. This is so because the Colorado Rules of Civil Procedure only apply to dependency and neglect proceedings when the proceedings are not governed by the Colorado Rules of Juvenile Procedure or the procedures set forth in the Children's Code.  C.R.J.P. 1; *see People in Interest of K.J.B.*, 2014 COA 168, ¶ 9; § 19-1-106(1), C.R.S. 2018. Because the Children's Code, here section 19-3-507(5)(a), addresses persons who may intervene in a dependency and neglect proceeding, the Colorado Rules of Civil Procedure, and more specifically, C.R.C.P. 20, do not apply to allow intervention.  *See, e.g., L.O.W. v. Dist. Court*, 623 P.2d 1253, 1257 n.15 (Colo. 1981) (Crim. P. 46 did not apply to the extent that it was inconsistent with the Children's Code and the juvenile procedure rule regarding bail); *see also Dash v. FirstPlus Home Loan Owner Tr. 1996-2*, 248 F. Supp. 2d 489, 503 (M.D.N.C. 2003) (parties "cannot use joinder rules to cure their lack of standing").

¶ 38    For these reasons, the former foster parents lack standing in the dependency and neglect case to oppose the Navajo Nation's motion to transfer jurisdiction.

## IV.  Motion to Transfer Jurisdiction

¶ 39    We last conclude that the juvenile court erroneously denied the Navajo Nation's motion to transfer jurisdiction.

¶ 40    Initially, we acknowledge recent legislation that amends the Children's Code's ICWA-implementing provisions.  H.B. 1232, 72nd Gen. Assemb., 1st Reg. Sess. (Colo. 2019).  It conforms these provisions to the updated federal ICWA regulations.  *See id.*  Even so, we apply the law that existed at the time the juvenile court denied transfer of jurisdiction to the Navajo Nation.  § 2-4-202, C.R.S. 2018 ("A statute is presumed to be prospective in its operation."); *AviComm, Inc. v. Colo. Pub. Utils. Comm'n*, 955 P.2d 1023, 1029 (Colo. 1998) ("Absent clear legislative intent to the contrary, statutes are given prospective application only.").

¶ 41    Under ICWA, "the state and the tribe have concurrent jurisdiction over Indian children who live off the reservation." *People in Interest of T.E.R.*, 2013 COA 73, ¶ 7.  The tribal court, however, is the preferred jurisdiction.  *People in Interest of J.L.P.,*

16

870 P.2d 1252, 1256 (Colo. App. 1994). Thus, in the absence of good cause and upon request by "either parent or the Indian custodian or the Indian child's tribe," the state court must transfer jurisdiction to the tribal court. 25 U.S.C. § 1911(b); *People in Interest of A.T.W.S.*, 899 P.2d 223, 224 (Colo. App. 1994); *J.L.P.*, 870 P.2d at 1256.

¶ 42    Although ICWA does not define good cause to deny transfer, the Bureau of Indian Affairs has issued guidelines for determining whether good cause exists. Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016), https://perma.cc/3TCH-8HQM (2016 Guidelines); *see* Notice of Guidelines, 81 Fed. Reg. 96, 476 (Dec. 30, 2016). The 2016 Guidelines provide that the good cause provision "is intended to permit a State court to apply a modified doctrine of forum non conveniens, in appropriate cases, to insure that the rights of the child as an Indian, the Indian parents or custodian, and the Tribe are fully protected." 2016 Guidelines at 48-49.

¶ 43    Under the Children's Code, the party opposing transfer of jurisdiction bears the burden of proof for establishing good cause to deny the transfer. § 19-1-126(4)(b), C.R.S. 2018; *T.E.R.*, ¶ 9.

And in reviewing a juvenile court's denial of a motion to transfer jurisdiction, we examine the record to determine whether substantial evidence supports the court's findings. *T.E.R.*, ¶ 9; *J.L.P.*, 870 P.2d at 1256.

¶ 44     We initially note that even though the juvenile court found that ICWA does not apply to the Navajo Nation's motion to transfer jurisdiction, it nonetheless exercised its discretion and considered the request.

¶ 45     We acknowledge that ICWA only addresses a request to transfer jurisdiction during foster care placement and termination of parental rights proceedings. 25 U.S.C. § 1911(b). It does not mention such a request during preadoptive or adoptive placement proceedings. *See id.* Even so, the Children's Code, as it existed at the time the juvenile court denied transfer, permits a juvenile court to consider transfer of jurisdiction to a tribal court "[i]n any of the cases identified in subsection (1) of this section involving an Indian child." § 19-1-126(1), (4)(a). The cases identified in subsection (1) include "pre-adoptive and adoption proceedings." § 19-1-126(1).

¶ 46     As noted, the Navajo Nation, the Department, and the GAL stipulated to the motion. And because the former foster parents

18

lack standing to oppose the motion, they should have been precluded from participating in the matter and presenting evidence of good cause to deny the transfer. Thus, because no party with standing opposed the transfer, no party met the burden of opposing transfer of jurisdiction. *See* § 19-1-126(4)(b).

¶ 47 Accordingly, we conclude that the juvenile court erred by denying the Navajo Nation's motion to transfer jurisdiction.

## V. Conclusion

¶ 48 We reverse the juvenile court's order denying the Navajo Nation's motion to transfer jurisdiction.

¶ 49 We remand this case to the juvenile court with directions to (1) transfer jurisdiction to the Navajo Nation's tribal court and (2) vacate and dismiss the former foster parents' petitions to adopt.

JUDGE DUNN and JUDGE WELLING concur.